Rockingham
No. 92-717

THE STATE OF NEW HAMPSHIRE

v.

TIMOTHY CAVANAUGH

December 30, 1993

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*Barbara R. Keshen*, public defender, of Manchester, by brief and orally, for the defendant.

THAYER, J.  The State appeals from a ruling of the Superior Court (*Gray*, J.) granting the defendant's motion to suppress. The trial court ruled that police officers' failure to have a previously issued search warrant present upon the commencement of a search violated the defendant's constitutional rights. For the reasons that follow, we reverse and remand.

The essential facts in this case are not disputed. On the evening of November 5, 1991, the Salem police planned and implemented a "controlled buy" of $50 worth of marijuana from the defendant at the

defendant's apartment. Several detectives maintained surveillance of the defendant's apartment building during and after the controlled buy.

While this event was unfolding, Detective Kevin Swift remained at the police station preparing the paperwork to obtain a search warrant for the defendant's apartment. After the controlled buy, a detective at the scene, Lieutenant Gould, called Detective Swift and provided Swift with details of the drug sale for his supporting affidavit. Gould soon joined Swift at the police station and reviewed the search warrant application and supporting affidavit that Swift had prepared. Swift then drove to the judge's house (*Marshall*, J.) to obtain the warrant, while Gould drove to a "pre-staging" area, approximately one mile from the defendant's apartment, and was joined there by another detective and a uniformed police officer with a drug dog. The officers waited at the pre-staging area for notification from Swift that the warrant had been issued.

At about 8:30 p.m., Judge Marshall read the affidavit and then signed the warrant. The validity of the warrant is not disputed. At about 8:50 p.m., Swift informed Gould by radio that the judge had signed the warrant they both had prepared. Swift then returned to the police station to make copies of the warrant.

Five minutes after receiving the notification from Swift, Gould and his assembled team knocked on the defendant's door. When the defendant answered, they identified themselves as police officers and told the defendant that they had a warrant to search his premises, that this warrant was on its way, and that it would arrive in approximately fifteen minutes. The defendant did not challenge their statements or refuse them entry. Upon entering the living room, the police immediately observed items that they began to seize. The defendant was placed under arrest.

At approximately 9:15 p.m., fifteen minutes after the search had begun, Detective Swift arrived at the defendant's apartment with the warrant, a copy of which was provided to the defendant. The entire search lasted approximately an hour.

The sole issue we must decide in this appeal is whether the police are required to have physical possession of a search warrant at the time and place they initiate a search.

The New Hampshire Constitution's search warrant requirement, part I, article 19, was enacted to prevent the exercise of arbitrary authority to search areas over which private persons had personal dominion. *State v. Pellicci*, 133 N.H. 523, 539, 580 A.2d 710, 720 (1990) (*Brock*, C.J., concurring specially). Part I, article 19 specifi-

cally states that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." In order for a search to be reasonable, part I, article 19 states that the "cause or foundation" upon which the warrant is grounded must be "supported by oath or affirmation" and "accompanied with a special designation of the persons or objects of search, arrest, or seizure." We have interpreted part I, article 19 as "requiring an objective determination of probable cause by a neutral and detached magistrate." *State v. Kellenbeck*, 124 N.H. 760, 764, 474 A.2d 1388, 1391 (1984).

The plain language of part I, article 19 does not require that police have a warrant physically in hand upon commencing a search authorized by that warrant. Part I, article 19 merely states that the search warrant must adhere to formalities "prescribed by law." These statutory formalities, found in RSA chapter 595-A (1986), similarly do not expressly require physical possession of a search warrant prior to the commencement of a search. RSA 595-A:5 requires that "[t]he officer taking property under the warrant shall give to the person from whom, or from whose premises, the property *was* taken a copy of the warrant and a receipt for the property taken, or shall leave the copy and receipt at the place from which the property *was* taken." RSA 595-A:5 (1986) (emphasis added). Thus, not only does the statute fail to require physical possession of the warrant at the start of the search, but its use of the past tense suggests that the warrant and receipt are to be provided to the property owner *after* the property has been seized. In the present case, the police fulfilled their statutory obligation by providing the defendant with a copy of the warrant prior to the termination of the search. Having analyzed this case under the express provisions of New Hampshire law, we now look beyond the letter of the law to examine the defendant's argument.

The defendant does not challenge the express provisions of part I, article 19 and RSA 595-A:5, nor does the defendant contest that those express provisions have been met here. Rather, the defendant asks us to graft an additional requirement onto the constitution and the statute; namely, that the police must have physical possession of a search warrant upon the commencement of a search. Conceding that federal law does not recognize such a requirement, the defendant cites New Hampshire precedent to argue that the New Hampshire Constitution should afford him greater protection than does the Federal Constitution in this case. The defendant seeks to require the police to carry the warrant when initiating the search for two

reasons: (1) to ensure that the police do not exceed the scope of their authority; and (2) to protect citizens and the police from violent confrontations that may result when the police initiate a search without a warrant in hand.

While there are no New Hampshire cases directly on point, federal law in this area is settled. Federal cases interpreting the Fourth Amendment and Federal Rule of Criminal Procedure 41(d), which parallel our constitution's part I, article 19 and RSA 595-A:5, do not require the police to have physical possession of a search warrant upon initiation of a search. Although we are not bound by these cases, *State v. Ball*, 124 N.H. 226, 233, 471 A.2d 347, 351–52 (1983), we may nevertheless rely on federal precedent for guidance in construing similar provisions of the New Hampshire Constitution or statutes. *Id.* In *Katz v. United States*, 389 U.S. 347 (1967), the United States Supreme Court found that the Federal Rules of Criminal Procedure do not "impose an inflexible requirement of prior notice." *Id.* at 355–56 n.16. The Court further noted that "Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not invariably require that this be done before the search takes place." *Id.* More recently, federal courts have found no violation of Rule 41(d) in cases in which police entered and began a search before the arrival of the search warrant. *See United States v. Hepperle*, 810 F.2d 836, 838–39 (8th Cir.), *cert. denied*, 483 U.S. 1025 (1987); *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir. 1986), *cert. denied*, 481 U.S. 1006 (1987).

The defendant would have us summarily reject federal precedent in this area because, in his view, the New Hampshire Constitution provides broader protection than the Federal Constitution. The defendant cites our decision in *State v. Settle*, 122 N.H. 214, 217, 447 A.2d 1284, 1285 (1982), where we held that, especially in the area of searches and seizures, "[o]ur constitution *often* will afford greater protection against the action of the State than does the Federal constitution." (Emphasis added.) *See also State v. Kennison*, 134 N.H. 243, 246, 590 A.2d 1099, 1101 (1991). We note that our use of the word "often" in *Settle* demonstrates that we do not recognize such additional protection automatically or haphazardly.

The defendant argues that requiring the police to have the search warrant in hand upon the commencement of the search would ensure that police act within the scope of the warrant. This argument begs an important question: Who is responsible for ensuring that the scope of the warrant is not exceeded, the property owner or the po-

lice? Were we to adopt a requirement that the police must possess the warrant upon commencement of the search, we would effectively empower property owners with the "right" to ensure that the warrant exists. We do not read our constitution to encompass such a right, nor do we find any common law to support it. *Cf. State v. Jones*, 127 N.H. 515, 520, 503 A.2d 802, 805 (1985) (holding that the "knock and announce" rule has its basis in the common law rather than the New Hampshire Constitution). As the defendant concedes, the property owner is not the party responsible for ensuring that the scope of the warrant is not exceeded during the search. Rather, it is the absolute responsibility of the police. If the police exceed the scope of the warrant, the property owner may seek recourse at a later time. "There is ample protection to the public from unlawful seizure of property by law enforcement agents, either by way of civil claims for damages or by way of the appropriate application of the exclusionary rule." *State v. Haas*, 134 N.H. 480, 485, 596 A.2d 127, 131 (1991).

The defendant also argues that physical possession of the warrant at the start of the search could prevent unnecessary violence in those exceptional cases in which a property owner aggressively challenges the authority of the police to enter. Although in those rare cases it may arguably be imprudent for the police to initiate a search without having a warrant in hand, it is not unconstitutional. The State Constitution does not forbid searches without a warrant being present, despite the alleged danger of confrontations. *See, e.g., State v. Santana*, 133 N.H. 798, 803, 586 A.2d 77, 80 (1991). The legislature has addressed similar issues, defining the public's right to protect property as well as its duty to cooperate with the police. *See, e.g.,* RSA 594:5 (1986); 627:8 (1986); 642:2 (Supp. 1992); *State v. Haas*, 134 N.H. at 485, 596 A.2d at 131. The defendant's policy argument for deterring possible confrontations would be better directed to the General Court than to this court.

In summary, we hold that the police are not required to possess the search warrant upon commencing the search. The trial court thus erred in suppressing the fruits of the search of the defendant's apartment. Having ruled that the police conduct in this case complied with State law, we need not consider the defendant's argument that this was a warrantless search.

*Reversed and remanded.*

BATCHELDER, J., with whom BROCK, C.J., joined, dissented; the others concurred.

BATCHELDER, J., dissenting: I would hold that the trial judge properly suppressed the 2.29 ounces of marijuana seized from the

defendant's premises which resulted in this prosecution. As the trial judge pointed out, there is not one whit of evidence in the record to explain why the police could not have waited the twenty minutes it took for the search warrant to arrive at the defendant's apartment. Apart from any constitutional concerns involving the search, common sense dictates that the more prudent rule to follow is for the officers to have the warrant in hand before seeking or forcing an entry, thereby lessening rather than exacerbating the tension likely to come into play between the police and the person whose property is about to be seized. The majority acknowledges that, in circumstances where the homeowner might aggressively challenge the search, prudence would suggest this approach. One is left to wonder, however, how the police are to know beforehand which situations might become confrontational and which might not.

There are other practical concerns worth mentioning in cases where an entry is sought on the strength of an outstanding warrant not in hand at the place to be entered. The issuing magistrate may modify the scope of the search to be conducted from what was sought. The courier or officer bringing the warrant to the scene may be diverted by reason of more pressing requirements, thereby leaving the officers at the scene warrantless at the conclusion of the search. There are undoubtedly many other similar situations depending on the circumstances of each case.

The trial judge also properly points out that the rights of those protected by the New Hampshire Constitution have been held to be more expansive than those protected by the United States Constitution in areas of search and seizure. *See State v. Koppel*, 127 N.H. 286, 291, 499 A.2d 977, 979–80 (1985); *State v. Settle*, 122 N.H. 214, 217–18, 447 A.2d 1284, 1285–86 (1982). Accordingly, we are not bound by any federal authorities including the Federal Rules of Criminal Procedure unless, of course, the federal guarantees of liberty are interpreted to provide greater protection than ours.

The argument that the precise language of RSA 595-A:5 (1986) somehow suggests that the legislature has relieved the State from having the warrant in hand at the outset comes to nothing. A review of the language in question is equally supportive of the view that the legislature contemplated the presence of the warrant at the outset and merely wished to make certain that at the completion of the seizure a copy of the warrant coupled with a receipt of the property seized be left with the appropriate person. On this issue the State seeks to buttress its argument by making an analogy to the statutory law of arrest. It asserts that a warrant-in-hand "requirement in the

search warrant context would seem to be at odds with the law attendant to the execution of arrest warrants. RSA 594:9 (1986) allows a police officer to effect a lawful arrest pursuant to an arrest warrant, although the officer does not have the warrant in his possession." This argument also fails and in the process dilutes the original premise. The inclusion of *specific* statutory language making reference to a peace officer effecting an arrest without the arrest warrant in hand strongly implies that in the ordinary course the warrant is in fact in hand at the time of arrest. The arrest of human beings, who by their nature are, to say the least, highly mobile creatures, is a far different state of affairs than the search of premises that are under heavy surveillance without a shred of evidence that the attendant circumstances are exigent. The failure of the legislature to include similar language in the search and seizure statute is strong evidence to me that the presence of the search warrant in hand at the outset of the entry and search is assumed by the legislature to be standard practice not requiring a saving clause.

Where I fundamentally disagree with the majority is in its choice of what assumption accompanies article 19's silence on the question of whether the physical presence of a warrant is required contemporaneous with a search pursuant to that warrant. The majority assumes that even where a warrant is required for a search to be constitutionally valid, presence of the actual warrant is not required. I, on the other hand, assume that in the absence of a strong justification, such as exigency, for dispensing with the warrant, the constitution contemplates that the warrant will be in the possession of the searching officer prior to commencing the search. In my view, this assumption serves to guarantee implementation of the constitutional requirement that the search warrant contain "a special designation of the persons or objects of search, arrest, or seizure." N.H. CONST. pt. I, art. 19. This particularity requirement was a response to "the objectionable eighteenth century practice that invested the executive officer, not a magistrate, with discretion to determine the scope of the search, and thus to engage in a general, exploratory rummaging in a person's belongings." *State v. Tucker*, 133 N.H. 204, 206, 575 A.2d 810, 812 (1990) (citation and quotation omitted). It would be difficult to give effect to the particularity requirement if the searching officers did not possess at the time of the search a roadmap clearly delimiting the locations and objects of a permissible search. Indeed, according to the United States Supreme Court and in language we have quoted approvingly, "[i]t is enough if the description is such that *the officer with a search warrant* can with reasonable

effort ascertain and identify the place intended." *Steele v. United States No. 1*, 267 U.S. 498, 503 (1925) (emphasis added), *quoted in State v. Moreau*, 113 N.H. 303, 308, 306 A.2d 764, 767 (1973). I believe that this language contemplates that the particularity requirement, once met within the four corners of the warrant, will ordinarily be effectuated by actual reference to the warrant during the search.

The majority states that because our constitution does not forbid warrantless searches, it therefore does not require the physical presence of a warrant where one has been issued. Warrantless searches, of course, are the exception, not the rule; they are *"per se* unreasonable and illegal, unless . . . made pursuant to one of a few recognized exceptions." *State v. Santana*, 133 N.H. 798, 803, 586 A.2d 77, 80 (1991) (quotation omitted). It is for the State to demonstrate that necessity justified the officer's dispensing with a warrant. *See State v. Murray*, 135 N.H. 369, 374, 605 A.2d 676, 679 (1992). I can find no principled way to distinguish between the showing required to overcome the threshold warrant requirement and that which should be required to overcome a presumption that the searching officer have the warrant in hand in order to fulfill the guarantee of the particularity requirement. In order to make constitutionally reasonable a search pursuant to a warrant not physically present, I would therefore require from the State the same showing of exigency as is required for a valid warrantless search.

The record in this case is barren of any evidence or circumstances that would require entry without the presence of the warrant. The apartment was under the watchful eye of many police officers and detectives. Exigent circumstances did not exist. The interests of the government in such situations cannot be frustrated by waiting for the warrant to arrive. In a society that seeks to neutralize whenever possible occasions for violence among its citizens and between the government and the citizenry, I would seek a procedure calculated to minimize the opportunity for confrontation rather than support a procedure that eventually might lead to aggressive conduct on the part of anyone. The officers involved in this case had a type of battering ram to be used in the event entry was refused. Whether it would have in fact been used on the facts of this case is beside the point. The testimony in this regard was equivocal. For the reasons set forth above and in accordance with the promise and guarantees of part I, article 19 of the New Hampshire Constitution, I would require the warrant to be present and available at the initiation of an entry preliminary to a search. It is arguable that RSA chapter 595-A contemplates the same requirement. In any event, the State has the burden

of proof in such cases to show the legality of the entry, and in this case, it has failed to sustain its burden, which plainly accounts for the trial court's ruling on the motion to suppress.

Our constitutional heritage is our legacy of ordered liberty. It is such cases as this that result in an incremental diminution of the protections given us by the framers. The interests of society in ferreting out and prosecuting criminal behavior should never rise to such a level that the force of constitutional protections be rendered lifeless by the death of a thousand cuts. This is such a case. I would affirm the trial court.

BROCK, C.J., joins in the dissent.