# IN THE SUPREME COURT OF IOWA

No. 09–1170

Filed January 6, 2012

**STATE OF IOWA,**

 Appellee,

vs.

**LEE ALLEN BREUER,**

 Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Jasper County, Darrell J. Goodhue, Judge.

On further review, defendant claims the court of appeals erred in affirming the district court's denial of defendant's motion to suppress. **AFFIRMED.**

Richard E. H. Phelps II of Phelps Law Office, Mingo, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Steven Johnson, County Attorney, and Michael K. Jacobsen, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider whether the withdrawal of a blood specimen pursuant to a search warrant violates the search and seizure provisions of the Iowa or United States Constitutions when the warrant is not physically present during the withdrawal. For the reasons expressed below, we conclude this case presents no constitutional violation.

## I. Factual and Procedural Background.

The material facts are undisputed. Lee Allen Breuer was the apparent driver in a one-car accident on Highway 6 in Jasper County. When Lieutenant Dennis Stevenson of the Jasper County Sheriff's Office arrived at the scene, he saw an overturned vehicle in a ditch along the side of the highway. Breuer was attempting to assist a passenger in the overturned vehicle.

At the scene, Stevenson rendered assistance. He detected an odor of alcohol about Breuer and observed that Breuer was unsteady on his feet. Stevenson also observed a number of beer cans lying in and around the car.

Breuer and the passenger were transported to Grinnell Regional Medical Center. At the hospital, Deputy Sheriff Aaron Groves asked Breuer to provide a breath test, but Breuer refused to provide a sample. Groves invoked implied consent procedures, including reading Breuer the implied consent advisory required by Iowa law. Breuer refused to provide a blood or urine test.

Following Breuer's refusals, Stevenson met with a magistrate in Newton and obtained a warrant authorizing withdrawal of a blood specimen from Breuer. *See* Iowa Code § 321J.10 (2009). After he obtained the warrant, Stevenson called Groves at the hospital in Grinnell

and advised Groves he had obtained the warrant and was en route to the hospital. Before Stevenson arrived at the hospital with the warrant, Groves informed Breuer that a search warrant had been obtained and demanded that Breuer submit to a blood draw. Breuer initially refused, but after Groves advised him that the blood would be withdrawn by force if necessary, Breuer acquiesced and a specimen was withdrawn.

Ten to fifteen minutes after the blood draw, Stevenson arrived at the hospital with the search warrant. Breuer was then advised that the warrant had arrived and a copy of it was placed with his belongings at the hospital. The alcohol content from the specimen provided by Breuer was 0.171, well over the legal limit for intoxication.

The passenger in Breuer's vehicle died as a result of injuries sustained in the accident. The State charged Breuer with homicide by vehicle in violation of Iowa Code section 707.6A(1). Breuer filed a motion to suppress the results of the blood draw, which the district court denied. The court of appeals affirmed. Breuer filed a motion for further review, which we granted.

## II. Standard of Review.

The standard of review of the constitutional issues raised in this case is de novo. *State v. Taeger*, 781 N.W.2d 560, 564 (Iowa 2010).

## III. Discussion.

**A. Introduction.** The parties agree that the blood draw could only legally be accomplished with a warrant. The parties also do not dispute that the search warrant was supported by probable cause and was otherwise valid. The sole issue presented in this appeal, therefore, is whether a blood draw pursuant to Iowa Code section 321J.10 is valid under the Fourth Amendment and article I, section 8 of the Iowa

Constitution when the search warrant for the blood specimen is obtained but not physically present during the withdrawal.

**B. Federal Caselaw.** The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As we have noted, the Fourth Amendment contains both a Warrant Clause and a Reasonableness Clause. *State v. Ochoa*, 792 N.W.2d 260, 268 (Iowa 2010). Neither the Warrant Clause nor the Reasonableness Clause specifically requires that an officer conducting a search have physical possession of a warrant at the time of the search. U.S. Const. amend. IV; *see also United States v. Banks*, 540 U.S. 31, 35, 124 S. Ct. 521, 524–25, 157 L. Ed. 2d 343, 352 (2003) (observing "[t]he Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization"). Further, no party has identified any historical materials to assist in our analysis of the narrow question before us.

The United States Supreme Court has not directly addressed whether the Fourth Amendment requires a search warrant to be physically present at the place to be searched when the warrant is executed. In two cases, however, the Court has at least implied the Fourth Amendment imposes no such requirement.

In *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004), the Court explained that the particularity requirement of the Fourth Amendment serves two purposes: to prevent general searches and to assure "the individual whose property is searched or seized of the

lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh*, 540 U.S. at 561, 124 S. Ct. at 1292, 157 L. Ed. 2d at 1081 (citation and internal quotation marks omitted). While recognizing the dual purposes of the particularity requirement, the Court noted that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Id.* at 562 n.5, 124 S. Ct. at 1292 n.5, 157 L. Ed. 2d at 1081 n.5.

The Court essentially repeated this observation in *United States v. Grubbs*, 547 U.S. 90, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006). In *Grubbs*, the Court noted, in the context of a challenge to an anticipatory search warrant, that neither the Fourth Amendment nor the Federal Rules of Criminal Procedure requires the executing officer to present the property owner with a copy of the warrant before conducting the search. *Grubbs*, 547 U.S. at 99, 126 S. Ct. at 1501, 164 L. Ed. 2d at 205. According to the *Grubbs* Court, the particularity requirement of the Fourth Amendment does "not protect an interest in monitoring searches." *Id.* (citation and internal quotation marks omitted).

The vast majority of federal lower courts have found, in a wide variety of settings, that physical presence of a warrant is not required to support a search under the Fourth Amendment. *See, e.g.*, *United States v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008) ("[W]e know from *Grubbs* and earlier decisions . . . that, whatever the most prudent course may be, the fourth amendment does not require officers to have a warrant in hand when searching."); *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir. 1987); *United States v. Bonner*, 808 F.2d 864, 869 (1st Cir. 1986); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981). Some cases suggest the better practice is to serve the search warrant

prior to the search when it is practicable and in keeping with the ends of justice to do so. *See, e.g., Hepperle*, 810 F.2d at 839 ("While it may be foolhardy to proceed in the absence of the physical presence of the warrant, it is not unconstitutional."); *see also* Model Code of Pre-Arraignment Procedure § SS 220.3(4), at 130 (1975). There is also some suggestion in the caselaw that the Federal Rules of Criminal Procedure require officers to leave a copy of the warrant when the officers conclude the search or when they vacate the premises. *See United States v. Simons*, 206 F.3d 392, 402–03 (4th Cir. 2000) (holding search team violated Rule 41 by failing to leave a copy of the warrant or receipt of items taken following the search, but concluding the violation did not have a constitutional dimension); *see also* Fed. R. Crim. P. 41(f).

There are a few outliers in the federal cases. One is *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008). In *Gantt*, the Ninth Circuit held that the Federal Rules of Criminal Procedure required federal agents to possess a search warrant before commencing a search. *Gantt*, 194 F.3d at 1001. Although the court rested its decision on the Federal Rules of Criminal Procedure, it noted that the physical presence of the search warrant at the outset of the search advanced the Fourth Amendment's particularity requirement by assuring the property owner of the lawfulness of the search and by giving "notice to the person subject to the search what the officers are entitled to seize." *Id.* at 1001–02 (citation and internal quotation marks omitted). But even *Gantt* recognizes that a search warrant need not be physically present where exigent circumstances exist. *Id.* at 1004–05. Precedent from the Ninth Circuit also suggests the court may have reached a different conclusion had its analysis been restricted to the Fourth Amendment inquiry. *See*

*United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir. 1978) (reasoning the Fourth Amendment was not offended even though the search warrant was absent during the search of the defendant's residence). Additionally, *Grubbs* and *Groh* cast doubt on *Gantt*'s continuing validity. *See United States v. Mann,* 389 F.3d 869, 875 n.1 (9th Cir. 2004) (stating "dicta in . . . *Groh* . . . casts serious doubt both on our interpretation of Rule 41 and our reasoning in *Gantt*").

**C. Caselaw from Other States**.   Several state courts have addressed the issue presented in this case.  *State v. Cavanaugh,* 635 A.2d 1382 (N.H. 1993), is the leading case holding that physical presence of a search warrant is not required.  In *Cavanaugh,* officers began to search the defendant's home after being informed by radio that a search warrant had been obtained.  *Cavanaugh,* 635 A.2d at 1383.  The warrant arrived at the home fifteen minutes after the search began.  *Id.*  The defendant argued the search was invalid because the officers did not have physical possession of the warrant when they initiated the search. *Id.*

The New Hampshire Supreme Court characterized the federal law on the issue as "settled" and, interpreting the New Hampshire Constitution, held that a warrant need not be physically present when a search is commenced.  *Id.* at 1384–85.  The court rejected the notion that the delivery of the warrant to the party being searched would help ensure police act within the scope of the warrant.  *Id.*  The court reasoned that the police have the "absolute responsibility" to stay within the scope of the warrant regardless of the knowledge of the property owner.  *Id.* at 1385.

An approach similar to that of the New Hampshire Supreme Court has been followed in a number of states.  *See, e.g., People v. Rodrigues-*

*Fernandez*, 286 Cal. Rptr. 700, 707 (Ct. App. 1991); *State v. Gomez*, 623 P.2d 110, 117–18 (Idaho 1980); *State v. Mims*, 524 So. 2d 526, 535–36 (La. Ct. App. 1988); *People v. Mahoney*, 448 N.E.2d 1321, 1322–23 (N.Y. 1983); *Green v. State*, 880 S.W.2d 198, 201 (Tex. Ct. App. 1994); *see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.12, at 811 (4th ed. 2004) (stating the prevailing view in state and federal cases is that officers need only exhibit or deliver warrant before post-search departure).

A different view, however, was advanced in *Commonwealth v. Guaba*, 632 N.E.2d 1217 (Mass. 1994). In *Guaba*, the Supreme Judicial Court of Massachusetts held that searches conducted before the arrival of the search warrant are per se unreasonable. *Guaba*, 632 N.E.2d at 1222–23. The court concluded that the purposes of the particularity requirement could only be achieved if the officers possessed the warrant in hand at the time of the search. *Id.* The failure of officers to physically possess a search warrant prior to the search, the *Guaba* court reasoned, fails "to put the occupant whose premises are to be searched on notice of the police's authority to search and the reasons for the search."[1] *Id.* at 1223.

**D. Iowa Caselaw.** Article I, section 8 and the Fourth Amendment contain nearly identical language.[2] Although we have not considered the

---

[1]The Supreme Judicial Court of Massachusetts has since limited the scope of this "notice" rationale. In *Commonwealth v. Valerio*, 870 N.E.2d 46, 55–56 (Mass. 2007), the court held that, although officers must physically possess the warrant before starting the search, in light of *Grubbs*, actual written notice of the officers' authority to search need not be given unless the property owner requests to examine the warrant.

[2]Article I, section 8 provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

precise issue before us, we have decided several cases that help guide our analysis. In *Bailey v. Lancaster*, 470 N.W.2d 351, 358 (Iowa 1991), we stated that the Reasonableness Clause is a safeguard against unreasonable execution of search warrants. Thus, even if police officers have a search warrant, the search must be executed in a reasonable manner. *Id.*; *see also State v. Kubit*, 627 N.W.2d 914, 921 (Iowa 2001) (stating the knock-and-announce rule is governed by the Reasonableness Clause), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

Further, our interpretation of article I, section 8 has "generally endorsed the warrant-preference requirement." *Ochoa*, 792 N.W.2d at 285. "All other things being equal," we have explained, the "historical context of the Fourth Amendment suggests a preference for particularity as a tool to cabin police power." *Id.* at 273. The requirement that a warrant "particularly describ[e] the place to be searched, and the persons and things to be seized," is a reflection of this preference for particularity. *See* Iowa Const. art. I, § 8; *Ochoa*, 792 N.W.2d at 273.

The particularity requirement, which is related to the probable cause requirement, "ensures that nothing is 'left to the discretion of the official executing the warrant.' " *State v. Randle*, 555 N.W.2d 666, 669 (Iowa 1996) (quoting *State v. Thomas*, 540 N.W.2d 658, 662 (Iowa 1995)); *see also State v. Mehner*, 480 N.W.2d 872, 875 (Iowa 1992). In doing so, the particularity requirement "guards the right of privacy from arbitrary police intrusion." *State v. Prior*, 617 N.W.2d 260, 263 (Iowa 2000). Also, particularity minimizes "the risk that the officers executing search warrants will by mistake search a place other than the place intended by the magistrate." *Mehner*, 480 N.W.2d at 875.

**E. Analysis.** Although Breuer recognizes we are free to interpret article I, section 8 differently from the Fourth Amendment, *Ochoa*, 792 N.W.2d at 267, he does not advance a reason for doing so in this case. Under these circumstances, we ordinarily consider "the substantive standards under the Iowa Constitution the same as those developed by the United States Supreme Court under the Federal Constitution." *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 76 n.3 (Iowa 2010). However, even when the parties advance no substantive distinction, we may apply the principles differently. *Id.*

At the outset, we note that Iowa has no express constitutional, statutory, or procedural provision requiring a search warrant to be physically present before a search may begin. Like the Fourth Amendment, neither the Reasonableness Clause nor the Warrant Clause of article I, section 8 mentions whether the warrant must be physically present during the search. Likewise, Iowa Code section 808.5, which governs the manner in which search warrants are to be executed, is silent on the issue. *See* Iowa Code § 808.5. Also, Iowa Code section 808.8 requires officers to provide a receipt or inventory of items taken *after* the search, but it creates in the officers no obligation to possess or present the warrant *before* the search begins. *See id.* § 808.8. Furthermore, the Iowa Rules of Criminal Procedure contain no rule explicitly requiring officers to be in physical possession of the search warrant before they may begin searching.

Breuer, in part, relies on Iowa Code section 321J.10(3)(*b*), which requires a duplicate warrant to be made if the warrant to obtain a blood specimen is obtained by telephone. Breuer argues that such a requirement for a duplicate warrant would be meaningless if the officers were not required to possess the warrant before the blood draw. This

argument overlooks other important objectives served by requiring the duplicate warrant. The duplicate-warrant requirement "preserve[s] the integrity of the record for review in any ensuing criminal litigation," "requires the issuing Judge to focus specifically and deliberately on the warrant's particular description," and "insures that the search is only as extensive as the invasion of privacy that was actually authorized." *People v. Crandall*, 489 N.Y.S.2d 614, 618 (App. Div. 1985); *see also Cazares-Olivas*, 515 F.3d at 729–30 (holding that the agents' failure to possess duplicate warrant required by the federal telephonic-warrant procedure did not violate the Fourth Amendment).

We agree with the prevailing view that neither the Fourth Amendment nor article I, section 8 requires a search warrant to be physically present at the place to be searched before the search may begin. We are unpersuaded by the reasoning in *Guaba* insofar as it presupposes the Fourth Amendment or article I, section 8 creates in property owners a constitutionally protected interest in monitoring searches executed pursuant to a valid search warrant. *See Grubbs*, 547 U.S. at 99, 126 S. Ct. at 1501, 164 L. Ed. 2d at 205. The Fourth Amendment and article I, section 8

> protect[] property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by imposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police," and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.

*Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 481–82, 83 S. Ct. 407, 414, 9 L. Ed. 2d 441, 451 (1963)); *cf. In re Detention of Shaffer*, 769 N.W.2d 169, 174–75 (Iowa 2009) ("[I]t is a fundamental principle of law that, when a court has authority to make an order and jurisdiction over the subjects of the order, an order by the court must be obeyed

regardless of the substantive legality of the order[.]"); *Smith v. State*, 542 N.W.2d 567, 569 (Iowa 1996) (stating that "one may be guilty of the crime of resisting arrest even if the initial arrest is illegal"). It is the responsibility of the officers executing the search warrant to stay within the scope of the warrant. *See Cavanaugh,* 635 A.2d at 1385. Officers who fail to do so risk suppression of valuable evidence and create in the property owner a cause of action for damages. *See* 42 U.S.C.A. § 1983 (West, Westlaw through P.L. 112-54 (excluding P.L. 112-40)); *State v. Schrier,* 283 N.W.2d 338, 342 (Iowa 1979) (stating illegally seized evidence is "inadmissible in a prosecution, no matter how relevant or probative the evidence may be"). While it may be ill-advised to proceed without the warrant in hand, neither the Fourth Amendment nor article I, section 8 is violated when officers commence a search without physical possession of a search warrant.

This is especially true in a case such as this where little was left to the discretion of the officers. The warrant was supported by probable cause and signed by a neutral, detached magistrate. *See State v. Fremont,* 749 N.W.2d 234, 237 (Iowa 2008). The search warrant particularly described who was to be searched (Breuer) and what was to be seized (a blood specimen). The search began only after the officer executing the warrant had been advised by the officer procuring the warrant that the warrant had been signed by a magistrate and was "in hand." Following the search, the officers provided Breuer a copy of the warrant by placing it with Breuer's possessions.

Additionally, the officers' discretion in executing the warrant was circumscribed by statute. Iowa Code section 321J.11 contains the procedure by which a blood specimen may be obtained. It states that a blood specimen may be withdrawn only by a "licensed physician, licensed

physician assistant as defined in section 148C.1, medical technologist, or registered nurse." Iowa Code § 321J.11. The person withdrawing the blood specimen must be acting at the request of a peace officer. *Id.* Section 321J.11 further provides that "[o]nly new equipment kept under strictly sanitary and sterile conditions shall be used for drawing blood." *Id.* Under these circumstances, we are satisfied that the executing officer's discretion was sufficiently cabined such that Breuer was protected from arbitrary police intrusion. *See Mehner*, 480 N.W.2d at 875; *see also Randle*, 555 N.W.2d at 669.

Breuer further argues that the knock-and-announce principle counsels us to consider, as part of the reasonableness analysis, the physical presence of the warrant. The knock-and-announce rule became part of the Fourth Amendment reasonableness inquiry in *Wilson v. Arkansas*, 514 U.S. 927, 930, 115 S. Ct. 1914, 1916, 131 L. Ed. 2d 976, 980 (1995). In *Wilson*, the Court reasoned that the knock-and-announce rule was firmly rooted in our common law tradition and concluded:

> Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.

*Wilson*, 514 U.S. at 934, 115 S. Ct. at 1918, 131 L. Ed. 2d at 982.

The knock-and-announce rule is codified at Iowa Code section 808.6. We have also recognized the common law origins of the statutory knock-and-announce requirement and that it embodies the reasonableness requirement of the Fourth Amendment. *State v. Brown*, 253 N.W.2d 601, 602 (Iowa 1977). Moreover, we have stated that the knock-and-announce rule advances three purposes: "To avoid property

damage resulting from forcible entry, to prevent violence and personal injury, and to protect the privacy of occupants." *State v. Farber*, 314 N.W.2d 365, 369–70 (Iowa 1982).

The common law origin of the knock-and-announce rule and its acceptance into early American law were the salient, if not the dispositive, factors of the Court's decision in *Wilson*. *See Wilson*, 514 U.S. at 934, 115 S. Ct. at 1918, 131 L. Ed. 2d at 982. Yet Breuer fails to cite any authority suggesting that common law courts required officers to be in physical possession of a search warrant before a lawful search could begin. In fact, there is some authority for the proposition that common law courts were more concerned that officers gave notice prior to entry and less concerned with what form of notice was provided. *See, e.g., Case of Richard Curtis*, (1757) 168 Eng. Rep. 67, 68 ("[N]o precise form of words is required in a case of this kind. It is sufficient that the party hath notice, that the officer cometh not as a mere trespasser, but claiming to act under a proper authority.").

Here, Groves provided sufficient notice of his authority and intent to withdraw a specimen of Breuer's blood. The physical absence of a search warrant may theoretically increase the potential for confrontation and violence, *see Hepperle*, 810 F.2d at 839, but the mere potential for violence in this context, without more, is insufficient to invalidate the search. Unlike the knock-and-announce context, the relationship between the absence of a search warrant and unnecessary property damage and violence is too tenuous to implicate either article I, section 8 or the Fourth Amendment.

It may be that the use of force exhibited by officers in executing a search warrant pursuant to Iowa Code section 321J.10 could offend the Reasonableness Clause of article I, section 8 or the Fourth Amendment.

In this case, however, Breuer's search-and-seizure rights were not offended by the methods Groves employed to execute the search warrant. At no point did Breuer request to see the warrant, and he did not question the veracity of Groves' assertion that a warrant had been obtained. Once Stevenson obtained the warrant, Groves advised Breuer that a warrant had been secured. Breuer then stated that he thought he could refuse. Groves explained that, because a warrant authorized a blood draw, Breuer's consent was no longer required and force would be used if necessary. *See State v. Owens*, 418 N.W.2d 340, 344 (Iowa 1988) (permitting use of physical force to withdraw blood from a suspected drunk driver). Once the warrant arrived a few minutes later, a copy was left in Breuer's hospital room. Under these facts, the seizure of Breuer's blood for chemical testing was reasonable.

**IV. Conclusion.**

For these reasons, we conclude that neither the Fourth Amendment nor article I, section 8 required the search warrant to be physically present before the search could begin. We, therefore, affirm the district court and court of appeals.

**AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.