APPEL, Justice
(concurring specially).
Parti.
I agree with Justice Mansfield’s opinion regarding the proper interpretation of Iowa’s sexual exploitation statute. I do not join, however, the discussion of the state constitutional issues presented in this case. Instead, I present a different analysis, which today, as it has in many recent cases, commands the support of the majority of the court.
Part II.
Where a party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard. This comes, however, with an important and indeed critical caveat, namely, that we reserve the right to apply that standard differently than its federal counterpart. See, e.g., Freeman v. Grain Processing Corp., 848 N.W.2d 58, 93 (Iowa *453 2014) (“[W]here a party does not suggest a different standard under Iowa law, we adopt for the purposes of the case the federal standard, reserving the right to apply the standard differently than under the federal cases.”); State v. Ragland, 886 N.W.2d 107, 113 (Iowa 2013) (noting “we ... reserve the right to apply the [federal standard] in a more stringent fashion than federal precedent”); State v. Kern, 831 N.W.2d 149,172,174 (Iowa 2013) (applying federal standards but explicitly reserving the right to apply those standards “in a more stringent fashion than federal precedents”); State v. Tyler, 830 N.W.2d 288, 291-92 (Iowa 2013) (“Where a party raises both state and federal constitutional claims but does not argue that a standard independent of the federal approach should be employed under the state constitution, we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent.”); State v. Becker, 818 N.W.2d 135, 150 (Iowa 2012) (“Even where a party has not provided a substantive standard independent of federal law, we reserve the right to apply the standard presented by the party in a fashion different than the federal cases.”); NextEra Energy Res., LLC v. Iowa Utils. Bd., 815 N.W.2d 30, 45 (Iowa 2012) (“Even in cases where a party has not suggested that our approach under the Iowa Constitution should be different from that under the Federal Constitution, we reserve the right to apply the standard in a fashion at variance with federal cases under the Iowa Constitution.”); State v. Oliver, 812 N.W.2d 636, 650 (Iowa 2012) (“[W]e do not necessarily apply the federal standards in the same way as the United States Supreme Court.”); State v. Brener, 808 N.W.2d 195, 200 (Iowa 2012) (“[E]ven when the parties advance no substantive distinction, we may apply the principles differently.”); State v. Pals, 805 N.W.2d 767, 771-72 (Iowa 2011) (“Even where a party has not advanced a different standard for interpreting a state constitutional provision, we may apply the standard more stringently than federal case law.”); State v. Fannon, 799 N.W.2d 515, 519 n. 1 (Iowa 2011) (“[Although we reserve the right to apply the principles differently, we generally assume that the legal principles governing both provisions are the same.”); King v. State, 797 N.W.2d 565, 571 (Iowa 2011) (“Even in ... cases in which no substantive distinction ha[s] been made between state and federal constitutional provisions, we reserve the right to apply the principles differently under the state constitution. ...”); Simmons v. State Pub. Defender, 791 N.W.2d 69, 76 n. 3 (Iowa 2010) (“Even in cases where no substantive distinction has been advanced by the parties [between Iowa and federal constitutional law], we reserve the right to apply the principles differently.”); State v. Bruegger, 773 N.W.2d 862, 883 (Iowa 2009) (“[W]e do not necessarily apply the federal standards in the. same way as the United States Supreme Court.”); Varnum v. Brien, 763 N.W.2d 862, 878 n. 6 (Iowa 2009) (“[W]e have jealously guarded our right to employ a different analytical framework under the state equal protection clause as well as to independently apply the federally formulated principles.” (Internal quotation marks omitted.)); In re S.A.J.B., 679 N.W.2d 645, 648 (Iowa 2004) (“In analyzing claims under the Iowa Equal Protection Clause, we independently apply federal principles.”); Racing Ass’n of Cent. Iowa v. Fitzgerald, 675 N.W.2d 1, 6-7 (Iowa 2004) (“[T]his court’s independent application of the rational basis test might result in a dissimilar outcome from that reached by the Supreme Court in eonsidéring the federal constitutional claim.”). Of course, this established principle does not necessarily mean that we will depart .from federal applications, as *454 our independent judgment may lead us to agree with the federal caselaw. See Breuer, 808 N.W.2d at 200-01 (recognizing authority to depart in application of federal caselaw but declining to do so). As noted by Robert F. Williams, a leading expert on state constitutional law, “State courts might even agree with the United States Supreme Court on the meaning— both textually and historically — of identical or similar federal and state constitutional provisions, but proceed to apply them differently under particular circumstances.” Robert F. Williams, State Courts Adopting Federal Constitutional Doctrine: Case-By-Case Adoptionism or Prospective Lockstepping?, 46 Wm. & Mary L.Rev. 1499,1501 (2005).
The distinction between a standard and its application is especially important where the legal principles have high degrees of generality, such as “totality of circumstances” tests, tests based upon “gross proportionality,” and tests based upon “reasonableness.” See Robert F. Williams, The Law of American State Constitutions 169-71 (2009); cf Jeffrey S. Sutton, What Does — and Does Not — Ail State Constitutional Law, 59 U. Kan. L.Rev. 687, 707 (2011) [hereinafter Sutton].[10] Even accepting the generalized standard, there is often no single correct answer to the interpretation of generalized constitutional commands, but only a range of plausible answers which must be decided on a case-by-case basis with the exercise of independent judgment. See Chicago & N.W. Ry. v. Fachman, 255 Iowa 989, 996, 125 N.W.2d 210, 214 (1963) (noting in the context of state and federal equal protection claims that “[w]hile the general rules applicable in such cases seem pretty well settled, as is so often the case the difficulty arises in their application”). A majority of the court today reaffirms the principle articulated in our many cases, namely, that where a party raises both state and federal constitutional claims, we generally apply the federal standard but reserve the right to apply the standard in a fashion different and more stringent from federal caselaw. To the extent there is any implication by silence in our cases that do not explicitly cite this well-established principle, we reject it.
Turning to the merits of the constitutional claims presented in this case, we conclude Edouard has not advanced a separate standard for analysis under the Iowa Constitution, and therefore apply the general standard in the federal caselaw. Based on the available cases applying the generally applicable standards, we narrowly conclude, as does Justice Mansfield, that, as applied under the facts and circumstances of this case, the sexual exploitation statute does not invade a fundamental right under the United States Constitution. See State v. Hollenbeck, 164 N.H. 154, 58 A.3d 591, 597-98 (2012) (concluding constitutional right recognized in *455 Lawrence v. Texas, 589 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2008) does not extend to imbalanced relationships that are not fully consensual). We similarly conclude that Edouard has not shown the statute as applied to him violates the Establishment Clause under the United States Constitution, largely for the reasons discussed in Justice Mansfield’s opinion. Cf. State v. Wenthe, 839 N.W.2d 83, 88-91 (Minn.2013) (“But the inclusion of religious actors [in the Minnesota clergy-sexual-conduct statute] does not violate the Establishment Clause because the limitation on members of the clergy is part of a larger statutory scheme that regulates the behavior of those involved in certain sexual relationships — relationships for which the Legislature has determined there is a power imbalance between the parties.”). We then proceed to the next step in the analysis and decline to apply the substantive standards advanced by Edouard in a fashion different from the prevailing caselaw under the Iowa Constitution. We decline to apply the legal standards on these issues differently than' in Hollenbeck and Wenthe under the Iowa Constitution because we are persuaded that the legal standards accepted by those parties have been sensibly applied in those cases. As a result, we reject the specific constitutional claims raised by Edouard in this case under both the United States and Iowa Constitutions.
CADY, C.J., joins this special concurrence; WIGGINS and HECHT, JJ., join in Part II only.

. As noted by Judge Sutton:
Why the meaning of a federal guarantee proves the meaning of an independent state guarantee is rarely explained and often seems inexplicable. If the court decisions of another sovereign ought to bear on the inquiry, those of a sister state should have more to say about the point. State constitutions are more likely to share historical and cultural similarities. They necessarily will cover smaller jurisdictions. And in almost all instances they will be construing individual-liberty guarantees that originated in state constitutions, not the Federal Constitution. ...
Sutton, 59 U. of Kan. L.Rev. at 708. See generally State v. Baldon, 829 N.W.2d 785, 803-35 (Iowa 2013) (Appel, J., concurring specially) (discussing the historic role of state constitutions in the protection of individual rights and the status of independent state constitutional law after the incorporation of the Bill of Rights).