NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-191                                            Appeals Court

COMMONWEALTH  vs.  LLOYD W. THOMPSON.


No. 14-P-191.

Plymouth.      February 4, 2015. - June 26, 2015.

Present:  Green, Grainger, & Massing, JJ.


Motor Vehicle, Operating under the influence.  Vessel, Alcoholic
    liquors.  Evidence, Blood alcohol test.  Constitutional
    Law, Blood test.  Due Process of Law, Blood alcohol test.
    Consent.  Search and Seizure, Consent.  Practice, Criminal,
    Motion to suppress.



Indictment found and returned in the Superior Court
Department on December 19, 2011.

A pretrial motion to suppress evidence was heard by
Cornelius J. Moriarty, II, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Barbara A. Lenk, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.
James J. Cipoletta for the defendant.

GRAINGER, J.  The defendant was indicted for operating a vessel under the influence of alcohol pursuant to G. L. c. 90B, § 8A.  The Commonwealth appeals from a Superior Court judge's order allowing the defendant's motion to suppress the results of a blood test administered after his arrest.

Background.  We recite the facts relevant to the issue on appeal as found by the judge which, in any event, are undisputed.  The defendant was operating his boat in Hull harbor when he struck a moored sailboat.  His passenger was ejected from the boat, suffered severe blunt force neck trauma and later died as a result of her injuries.  The defendant complained of a leg injury and was transported by ambulance to the South Shore hospital after being placed under arrest by police who had arrived on the scene responding to a report of the accident.[1]  At the conclusion of the defendant's medical treatment, the arresting officer asked the defendant for consent to give a blood sample for chemical testing.  The officer testified that he read the defendant his rights "word-for-word" from the consent form created for a violation of operating a motor vehicle while intoxicated, G. L. c. 90, § 24. Several hours later the defendant signed a separate consent form required by

_____

[1] At the scene the arresting officer could smell an odor of alcohol on the defendant's breath, noticed that his eyes were bloodshot, that he was unsteady on his feet and appeared lethargic.

the hospital and the nurse took the defendant's blood sample.[2]

Before trial the defendant moved to suppress the results of the

blood sample, alleging that he did not give effective consent.

The judge allowed the motion and the Commonwealth filed an

interlocutory appeal.  Mass.R.Crim.P. 15, as appearing in 422

Mass. 1501 (1996).

Discussion.  We accept the motion judge's findings of fact

absent clear error but review the conclusions of law

independently.  Commonwealth v. Mitchell, 468 Mass. 417, 421

(2014).  The motion judge allowed the defendant's motion to

suppress because he determined that the defendant's consent was

coerced when the officer mistakenly advised him of greater than

actual penalties for refusing to submit to the blood test.  The

officer read the defendant the statutory rights form for

operating a motor vehicle while under the influence of alcohol

(motor vehicle OUI).  That form indicated that if the defendant

refused to provide the blood sample, his license would be

suspended for a minimum of 180 days, with a maximum possibility

of life suspension,[3] depending on the number of the defendant's

---

[2] The defendant signed the law enforcement consent form at
1:17 A.M. and the consent form required by the hospital at 3:54
A.M. The nurse thereafter took the blood sample.  At no time did
the defendant withdraw his consent.

[3] The statute itself specifies that the length of suspension
depends on the defendant's number of previous convictions for
operating a motor vehicle while impaired.  The form provides only

previous convictions, if any, for operating a motor vehicle while impaired. The form used by the officer was correct insofar as it referred only to the motor vehicle OUI statute which contains increased periods of suspension for previous OUI convictions, whether related to a motor vehicle or a vessel. See G. L. c. 90, § 24(1)(f)(1), as amended by St. 2003, c. 28, § 5.

However the actual, and only, penalty for refusing a blood test under the statute that prohibits operating a vessel while under the influence of alcohol (boating OUI) is a license suspension for 120 days, with no possibility of any greater suspension regardless of the existence or number of prior motor vehicle or boating OUI convictions. G. L. c. 90B, § 8(a)(2)(a)(A), as amended by St. 1994, ch. 318, § 11. Thus, unlike the motor vehicle OUI statute, the boating OUI statute does not contain any reciprocal provision of enhanced penalties for refusing a chemical test when a suspect has previous convictions for motor vehicle or boating OUI. Compare G. L. c. 90B, § 8(a)(2)(a)(A), with G. L. c. 90, § 24(1)(f)(1). In sum there is no possibility under the statute that an operator's driver's license can be suspended for life upon a refusal to submit to a chemical test when arrested for a boating OUI.

---

the range of 180 days to life in summary fashion, without stating how the precise length of suspension is determined.

We therefore agree with the motion judge that the inaccurate and harsh warning provided to the defendant was defective. However, the judge evaluated this defect in the context of the constitutional standard for evaluating consent to a search which requires that the consent be "unfettered by coercion, express or implied." Commonwealth v. Walker, 370 Mass. 548, 555 (1976).[4] He thereupon determined that the "threat of a lifetime revocation of one's driver's license, a draconian consequence, for refusal to submit to a blood test is, in my view, unquestionably impliedly coercive" and suppressed the results of the blood test. However, the constitutional standard does not apply in this case.

The statute prohibiting boating while impaired, like the motor vehicle OUI statute, contains an "implied consent" provision, that permits a blood test at a medical facility administered at the direction of a law enforcement officer. See G. L. c. 90B, § 8(a)(2)(a); G. L. c. 90, § 24(1)(f)(1). This provision means that any person arrested for a violation of the boating OUI statute does not have a constitutional right to refuse to submit to a blood test. Commonwealth v. Davidson, 27

---

[4] Commonwealth v. Walker, citing both Schneckloth v. Bustamente, 412 U.S. 218, 222 (1973), and Commonwealth v. Mendes, 361 Mass 507, 512 (1972), draws no distinction between the State and Federal constitutional standards for consent. Walker, supra at 554-555.

Mass. App. Ct. 846, 848 (1989).[5]  Instead, the basis on which we evaluate consent to undergo a chemical test for OUI is conferred by statute, ibid., and valid consent only requires "verbal agreement to undergo, lack of objection to, or cooperation in the performance of, the blood testing."  Commonwealth v. Carson, 72 Mass. App. Ct. 368, 370 (2008).  "The ultimate question is whether, in the light of all the circumstances, a man of reasonable caution would be warranted in the belief that some limitation was intended by the consent giver."  Commonwealth v. Hinds, 437 Mass. 54, 59 (2002), quoting from Commonwealth v. Cantalupo, 380 Mass. 173, 178 (1980).

The motion judge credited the testimony of both the officer at the hospital and the nurse who drew the defendant's blood, finding that while the defendant was visibly upset and sobbing at times, he was coherent and cooperative.[6]  While there is ample evidence from the testimony of both the officer and the nurse regarding the defendant's state of mind, level of cooperation,

_____

[5] Commonwealth v. Davidson discusses the implied consent provision in the motor vehicle statute, which, but for the penalty for refusal, is identical to the implied consent provision in the boating OUI statute.  Davidson, supra.

[6] Among the undisputed facts is that when the officer asked the defendant for consent, the defendant said "whatever you want." The nurse testified without contradiction that the defendant was not suffering from any neurological trauma, that he again said "whatever you need to do is fine" when she asked for his consent and that he willingly held his arm out for her so she could draw his blood.

and willingness to submit to the blood test under the criteria enunciated in Davidson, supra, and Carson, supra, the motion judge did not make any findings of fact regarding the criteria under the correct, non-constitutional, standard.  Accordingly, we vacate the allowance of the defendant's motion to suppress and remand to the Superior Court for further proceedings consistent with this opinion.

So ordered.