WATERMAN, Justice
(dissenting).
I respectfully dissent and would affirm Dale Dean Pettrjohn Jr.’s conviction for drunken boating. The majority correctly 'holds that Officer William Wineland lawfully stopped the boat Pettijohn was operating on Saylorville Lake and that Petti-john’s warrantless breath test to measure his blood alcohol level satisfied the Fourth Amendment. The majority also correctly rejects Pettijohn’s theory that his “natural right” to use Iowa waterways limits the State’s power to criminalize drunken boating as it criminalizes drunken driving on Iowa roads. But I part company with the. majority’s unprecedented conclusion that Pettijohn’s breath-test results must be suppressed under article I, section 8 of the Iowa Constitution, In my view, that breath test was a constitutional search incident to arrest and valid under the implied-eonsent statute. See Birchfield v. North Dakota, 579 U.S. -, -, -, 136 S.Ct. 2160, 2177, 2185, 195 L.Ed.2d 560 (2016).[18]
Importantly, nothing in today’s opinion invalidates the implied-eonsent laws for motorists, which have been in place in our state for over half a century. Trial judges should accept the word of the majority and Chief Justice Cady’s special concurrence that today’s decision is limited to drunken boaters. The door is closed to any effort to extend this decision to drunken drivers. Even so, the majority is wrong to suggest that there is a relevant constitutional distinction between the implied-eonsent laws for boating and for driving. If you refuse the breath test as a boater, you receive a mandatory civil penalty of $500 for your first refusal, and you are not allowed to operate a boat for a year. See Iowa Code § 462A.14B(2) (2013). On the other hand, if you refuse the breath test as a driver, you lose your driver’s license for one year for your first refusal and pay a $200 civil penalty. See Iowa Code §§ 321J.9(1), .17(1). Now ask yourself, which is a more serious consequence for refusal: (1) losing your driver’s license for a year and having to pay $200, or (2) being unable to operate a boat for a year and having to pay $500? I think the vast majority of Iowans—if they had to choose—would pick the boating sanction over the driving sanction. Even though a boater’s refusal to take the breath test results in a larger monetary penalty, many people would gladly pay $500 and give up recreational boating in return for being able to keep their driver’s licenses, especially when they take into account the impact of a driver’s license suspension on what they will have to pay in the future for car insurance. If constitutionality turns on the seriousness of the sanction, then the sanction for a driver’s refusal to test is more serious than the sanction for a boater’s refusal to test.
The special concurrence tries to patch this hole in the majority’s reasoning by asserting that the driver is only “losing the benefit of the bargain that resulted in obtaining the privilege to drive.” The State granted the right to drive, and the State is taking back the right to drive because the motorist did not consent to testing. The problem with this reasoning is that it is totally circular. It assumes the validity of the “bargain,” i.e., the implied-eonsent law for driving. One can just as well argue that the boater is losing only the benefit- of his or her bargain, since the $500 penalty is *43 part of the statutory scheme that the boater. accepts when operating a boat on the state’s waters.
The legislature rationally included a $500 penalty for a boater’s refusal to submit to a breath test. Otherwise, drunken boaters could simply refuse the test without meaningful consequence. Loss of boating privileges alone is insufficient. Boating, unlike driving, is typically a social activity, arid most , could simply have a friend or family member operate the boat while they enjoy the ride.
Well-settled precedent upholds the constitutionality of implied-consent laws. See, e.g., Birchfield, 579 U.S. at -, 136 S.Ct. at 2185. The reasoning of those cases applies equally to boaters. The majority misleadingly cites cases requiring warrants for invasive blood tests as if those courts were talking about breath tests, even as the majority ignores the nearly unanimous view of courts nationwide upholding war-rantless breath tests under equivalent implied-consent statutes. The majority blurs the dispositive distinction between implied-consent statutes, lawfully enacted to promote safe driving and boating, and actual consent put in question by the very intoxication to be measured by the breath test.
The majority pretends the technology is already in place to quickly obtain electronic warrants from the field. It is not. In fact, internet connectivity is spotty or lacking in popular boating areas and much of rural Iowa. Iowa law has .required most warrants to be presented in person to a judicial officer.[19] The majority blithely suggests the legislature fund the technology upgrades for patrol officers statewide for the brave .new world in which instant warrants can be obtained anywhere in Iowa 24/7. That world is years away.
Pettijohn did not raise the unsupported theories employed by the majority , to reverse his conviction. The majority goes well beyond what Pettijohn argued in district court or on appeal and thereby blindsides the State and unfairly reverses the district court on theories never presented in that forum. We- are supposed to be impartial adjudicators rather than partisan advocates. And, by concocting new theories on appeal, the majority makes new bad law without allowing the State the opportunity to develop a record affirmatively refuting the flawed factual premise underlying the majority’s holding—that warrants can be *44 obtained electronically within minutes. There is no factual support in the record for that premise.[20]
I. Today’s Opinion Undermines Public Safety Without Advancing Civil Liberties.
The majority eviscerates Iowa’s implied-consent regimen for boaters, but to what end? Nowhere does the majority or Petti-john suggest a neutral magistrate would have refused to issue a warrant for his breath test on this record. How have we advanced the rights of drunken boaters, other than allowing them to avoid the legal consequences of their actions? Our courts can and do suppress test results in appropriate cases when statutory or constitutional requirements are not met. See State v. Walker, 804 N.W.2d 284, 296 (Iowa 2011) (suppressing breath-test results as remedy for violation of statutory requirement to permit detainee to meet alone and in private with attorney); State v. Albrecht, 657 N.W.2d 474, 477 (Iowa 2003) (“The remedy for not substantially complying with the implied-consent procedure is the exclusion of the test results.... ”). This is not such a case.
A. The Purposes of the Warrant Requirement Are Not Served by Requiring a Warrant for Breath Tests. We have expressed a preference for warrants. State v. Breuer, 808 N.W.2d 195, 200 (Iowa 2012). But our rationales for that preference do not support abandoning the implied-consent law in favor of warrants for breath tests. The particularity requirement precludes general warrants and limits the scope of the search to “cabin police power” so police do not search places and things not described in the warrant. See id. (quoting State v. Ochoa, 792 N.W.2d 260, 273 (Iowa 2010)). Only a breath test is at issue here, a procedure that is “capable of revealing only one bit of information, the amount of alcohol in the subject’s breath.” Birchfield, 579 U.S. at -, 136 S.Ct. at 2177; see also id. at -, 136 S.Ct. at 2181 (explaining warrants would not serve the function of “delineating the scope of a search” because “[i]n every case the scope of the warrant would simply be a [blood alcohol content (BAC) ] test of the arres-tee”).
A warrant requirement also imposes the “deliberate, impartial judgment of a judicial officer ... between the citizen and the police.” Breuer, 808 N.W.2d at 201 (alteration in original) (quoting United States v. Grubbs, 547 U.S. 90, 99, 126 S.Ct. 1494, 1501, 164 L.Ed.2d 195 (2006)). Here, the district court correctly found the statutory implied-consent requirements were met and probable cause existed to search Petti-john’s breath. Officer Wineland observed Pettijohn operating the boat, and two other officers observed Pettijohn’s slurred speech, bloodshot eyes, and poor performance on field tests for sobriety. How often does the majority imagine a magistrate will refuse a warrant for a breath test presented electronically based on the officer’s stated observations of the suspect’s intoxication? See Birchfield, 579 U.S. at -, 136 S.Ct. at 2181 (“In order to persuade a magistrate that there is probable cause for a search warrant, the officer would typically recite the same facts that led the officer to find that there was probable cause for arrest.... ”). What value are we adding by requiring a warrant? If the requisite grounds for requesting a *45 breath test are lacking, the test results can and should be suppressed. Do we really need our judicial officers to review warrant applications on nights and weekends when drunk boaters are typically detained? And, if so, would the magistrate not be better positioned to assess the grounds for the warrant if the officer appeared in person to answer questions?
B. Today’s Decision Creates Practical Problems. Officers will have to race the clock as blood alcohol dissipates, set aside their other duties, and obtain a search warrant for the breath test. This may take over an hour, during which time the officer is unavailable to patrol to detect other crimes or respond to other emergencies. In rural areas, it may be impossible to get a warrant in time. For example, in State v. Seige, a drunken boater fell off his speedboat while executing a turn, and his unmanned boat crashed into a sailboat, killing one of the occupants. No. CR07Q292771, 2009 WL 659198, at *1 (Conn. Super. Ct. Feb. 11, 2009). “After the collision, the defendant’s vessel continued to run in circles at a high rate of speed posing a great danger to other vessels on the river.” Id. As a result, his boat could not be brought under control until about forty-five minutes after the accident. Id. The defendant was not delivered to the dock until approximately one hour after the accident. Id. at *2. The dock area was crowded because “of the holiday weekend” and “onlookers brought on by the chaotic scene.” Id. After administering rushed field sobriety tests in the dock’s parking lot, the officers transported the defendant to the police station. Id. at *3. Officers were only able to administer the first blood alcohol test over two hours after the accident. Id. The defendant’s BAC test results of .15 and .17 were suppressed because the tests were not administered within two hours as required by statute. Id. at *3, *5; see also Iowa Code § 462A.14A(4)(&) (“If the peace officer fails to offer a test within two hours after the preliminary screening test is administered or refused, or the arrest is made, whichever occurs first, a test is not required, and there shall be no suspension of motorboat or sailboat operation privileges.”). Now, imagine if the officers also had been required to apply for, and receive, a warrant in the midst of this chaos. We can expect round after round of hearings to adjudicate exigency exceptions or issues of actual consent.
Indeed, as the Supreme Court cautioned,
If a search warrant were required for every search incident to arrest that does not involve exigent circumstances, the courts would be swamped. And even if we arbitrarily singled out BAC tests incident to arrest for this special treatment ..., the impact on the courts would be considerable. The number of arrests every year for driving under the influence is enormous—more than 1.1 million in 2014. Particularly in sparsely populated areas, it would be no small tasks for courts to field a large new influx of warrant applications that could come on any day of the year and at any hour. In many jurisdictions, judicial officers have the authority to issue warrants only within their own districts, and in rural areas, some districts may have only a small number of judicial officers.
Birchfield, 579 U.S. at-, 136 S.Ct. at 2180 (citations omitted). There is good reason no other court or legislature has required search warrants for breath tests. It is nonsensical.
Our legislature enacted implied-consent laws to avoid such problems. “[W]e have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa’s roadways in order to safe *46 guard the traveling public,” Welch v. Iowa Dep’t of Transp., 801 N.W.2d 590, 594 (Iowa 2011); see also State v. Wallin, 195 N.W.2d 95, 96 (Iowa 1972) (“The [implied-consent] law was enacted to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers.”). That goal of public safety applies to motorists and boaters alike.
“Alcohol use is the leading known contributing factor in fatal boating accidents.” U.S. Coast Guard, 2016 Recreational Boating Statistics 6 (May 22,2017), http://www. uscgboating.org/library/accident-statistics/ Recreational-Boating-Statisties-2016.pdf. Susan Stocker, boating law administrator and education coordinator for the Iowa Department of Natural Resources, recently explained,
One-third of all boating fatalities nationally involved alcohol and many of those victims were innocent bystanders....
The effects of alcohol can be intensified when combined with wind and wave action and an extended time spent in the sun. Operators may not think they are under the influence, but their judgment, reaction time, balance and vision indicate that they are'
News Release, Operation Dry Water Starts June 2k (June 21, 2016), http ://www. iowadnr.gov/About-DNR/DNR-News-Releases/ArticleID/762/Operation-Dry-Water-Starts-June-24. ■
Implied-consent laws have withstood the test of time in Iowa for over a half century. The legislature enacted Iowa’s first implied-consent law in Iowa in 1963. Welch, 801 N.W.2d at 594 (citing 1963 Iowa Acts, ch. 114, § 37-50 (codified at Iowa Code ch. 321B (1966))). The general assembly declared' the implied-consent provisions “are necessary in order to control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition.” 1963 Iowa Acts ch. 114, § 37.[21] And now as to drunken boaters, this court overrides that rational policy choice by our elected branches of government.
II. Our Court, and Other State Courts, Have Repeatedly Held that Implied-Consent Laws Are Not Inherently Coercive.
Pettijohn concedes that “implied consent schemes have, to date, passed constitutional muster as they pertain to ordinary operating while intoxicated cases involving driving of motor vehicles on public highways.” Although a reader would- not know this from the majority opinion, we have repeatedly rejected constitutional challenges that Iowa’s implied-consent laws are coercive. State v. Bernhard, 657 N.W.2d 469, 472 (Iowa 2003) (concluding decision to take blood test not coerced even though defendant “was motivated to agree to a blood test because of the desire not to lose his license”); State v. Owens, 418 N.W.2d 340, 344 (Iowa 1988) (holding no due process violation because “decision to submit to chemical testing [was] a reasonable and informed decision to cooperate with the officers’ investigation rather than a decision coerced by threat”); State v. Knows, 313 N.W.2d 510, 512 (Iowa 1981) (“Because the State does not have to prove the accused knew of his right to refuse the test, we hold that the officers administering the test do not have a due process obligation to inform him of that right under either the Iowa or United States Constitution.”); State v. Vietor, 261 N.W.2d *47 828, 830 (Iowa 1978) (“We have upheld the constitutionality of this [implied-consent] statute and have approved the admissibility of such [test] refusal[s] in criminal trials.”); State v. Johnson, 257 Iowa 1052, 1062, 135 N.W.2d 518, 525 (1965) (rejecting constitutional challenge,, stating that Iowa’s implied-consent “law is almost identical to laws of a like nature upheld in other states”). The majority effects a sea change in Iowa law today without fairly confronting our precedent.
The majority also fails to acknowledge the legion of cases in other states rejecting similar constitutional challenges. See, e.g., People v. Harris, 225 Cal.App,4th Supp. 1, 170 Cal.Rptr.3d 729, 734 (2014) (“[Consent is not invalid under the Fourth Amendment simply because it was given in advance and in exchange for a related benefit, and this is 'all the implied consent law accomplishes.”); Johnson v. State, 450 N.E.2d 123, 125 (Ind. Ct. App. 1983) (“Knowledge of a possible penalty for refusal to submit to the test is not so inherently coercive as to negate [the defendant’s] consent.”); State v. Brooks, 838 N.W.2d 563, 570-72 (Minn. 2013) (rejecting claim that consent was coerced when driver was told refusal constituted criminal offense); State v. Padley, 354 Wis.2d 545, 849 N.W.2d 867, 876 (App. 2014) (“The fact that the driver is forced to make-a difficult choice does not render the consent involuntary.”); Walters v. State ex rel. Wyo. Dep’t of Transp., 300 P.3d 879, 883 (Wyo. 2013) (“Explaining the consequences of her choice as to whether to take the test may or may not have pressured Walters in some sense, but providing accurate information did not rise to a level of coercion which would render her consent involuntary.”).
In Padley, cited by the majority, the Wisconsin Court of Appeals concluded that its implied-consent statute did not violate the Fourth Amendment or render an accused’s consent coerced. 849 N.W.2d at 881, 887. The court observed the implied-consent statute “does not authorize searches, it authorizes law enforcement to require a driver to choose between giving actual consent to a blood draw, or withdrawing ‘implied consent’and suffering implied-consent-law sanctions.” Id. at 880. The Padley court appropriately distinguished Missouri v. McNeely, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), upon which the majority relies, because it was not “a consent case.” Padley, 849 N.W.2d at 881. The Padley court found that consent was voluntary, stating, “Nowhere does [defendant] develop a legal argument that the State cannot present a suspect with the hard choice of giving up a constitutional right or accepting a permissible penalty.” Id. at 886; see also People v. Harris, 234 Cal.App.4th 671, 184 Cal.Rptr.3d 198, 209 (2015) (“[W]e conclude that free and voluntary submission to a blood test, after receiving an advisement under the implied consent law, constitutes actual consent to a blood draw under the Fourth Amendment.”); Brooks, 838 N.W.2d at 572 (highlighting implied consent as a “legal tool” and holding consent was not coerced merely because Minnesota attached penalties for refusal); State v. Modlin, 291 Neb. 660, 867 N.W.2d 609, 619-20 (2015) (concluding that driver consented to the, blood draw despite implied consent imposing a “difficult choice” of consent or revocation).
The reasoning of these cases applies with equal force to boating. See, e.g., State v. Rossiter, No. A13-2210, 2014 WL 5506964, at *3 (Minn. Ct. App. Nov. 3, 2014) (concluding that boating implied-consent advisory did. not “coerce[ ] [boater’s] consent”); see also Commonwealth v. Thompson, 87 Mass.App.Ct. 572, 32 N.E.3d 1273, 1277 (2015) (“[A]ny person arrested for a violation of the boating OUI statute does not have a constitutional right *48 to refuse to submit to a blood test.”)- The implied-eonsent statute “establishes the basic principle that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways.” State v. Hitchens, 294 N.W.2d 686, 687 (Iowa 1980). “If the driver withdraws that consent by refusing an appropriate request by an officer to take a test, the statute allows the state to withdraw the driver’s privilege of using our public highways.” Id. The same is true for operating a motorboat on public waterways. “In the unique context of giving consent to a search ... in exchange for a benefit, the person cannot enjoy the benefit only then to renounce the cost, and expect to continue enjoying the benefit.” Harris, 170 Cal.Rptr.3d at 735; see also State v. Holt, 261 Iowa 1089, 1094, 156 N.W.2d 884, 887 (1968) (“We know of no reason why a person in order to enjoy the privilege so granted may not waive such ‘rights’ as he might otherwise have.”).
III. Gaskins Is Not on Point; This Is a Search of the Person, Not the Vehicle, Incident to Arrest.
The majority relies heavily on State v. Gaskins, 866 N.W.2d 1 (Iowa 2015), but misapplies it. In Gaskins, our court diverged from settled Federal Fourth Amendment precedent to limit warrantless searches incident to arrest (SITA) to those necessary for officer safety or “justified by the State’s interest in preserving evidence from destruction, not merely collecting it expediently.” Id. at 14. Gaskins does not support the majority’s decision for four reasons. First, Gaskins was wrongly decided. See id. at 38 (Waterman, J., dissenting); id. at 56 (Zager, J., dissenting). Second, Gaskins is inapposite because neither actual consent nor implied consent was at issue. Third, under Gaskins, a breath test constitutes a permissible warrantless SITA to preserve evidence given the rapidly dissipating blood alcohol. See id. at 14 (majority opinion) (“We conclude the SITA exception to the warrant requirement under article I, section 8 of the Iowa Constitution is justified by the State’s interest in preserving evidence from destruction.... ”); see also Birchfield, 579 U.S. at -, 136 S.Ct. at 2182 (equating “preventing the loss of blood alcohol evidence as the result of the body’s metabolism of alcohol” with “[shopping an arrestee from destroying evidence” because “[i]n both situations the State is justifiably concerned that evidence may be lost”).
Fourth, and most importantly, Gaskins is inapposite because it merely limited the search of a vehicle, not a person. It is important to get to the core concept of the search incident to arrest. See Gaskins, 866 N.W.2d at 13 (majority opinion) (declining to adopt the federal “evidence-gathering purpose as a rationale for warrantless searches of automobiles and their contents incident to arrest under article I, section 8 of the Iowa Constitution” (emphasis added)). When a criminal suspect is arrested, law enforcement is allowed to search the suspect’s body—to empty the person’s pockets, go through the person’s clothing, and even require the person to remove clothing for search purposes. Even my colleagues do not believe such searches are unconstitutional.
A person’s breath is a part of the body; it is not like a vehicle. Cf. Gaskins, 866 N.W.2d at 16 (holding warrant required to search locked safe in vehicle after arrest of driver). And most people would regard a breath test that takes a few seconds as less invasive of their privacy than having to remove their clothes. So Gaskins is not the correct analogy at all.
As the United States Supreme Court pointed out in Birchfield, the basis for requiring a warrant before a breath test is administered to an arrestee would also *49 require a warrant before “searching through objects found on the arrestee’s possession.” 579 U.S. at-, 136 S.Ct. at 2180. Likewise, if a rape victim reported to the police that she had scratched her male assailant’s chest while resisting, the majority’s reasoning today would require a warrant before police could ask the arrested assailant to remove his shirt. “If a search warrant were required for every search incident to arrest that does not involve exigent circumstances, the courts would be swamped.” Id. I dissented in Gaskins, but there is no need to extend our Iowa search and seizure law relating to automobiles to searches of the person incident to arrest
IV. The Majority Departs from Birchfield.
Birchfield, as the majority concedes, makes clear that warrantless breath tests satisfy the Fourth Amendment. Id. at -, 136 S.Ct. at 2185 (“Because breath tests are significantly less intrusive than blood tests ..., we conclude that a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving. As in all cases involving reasonable searches incident to arrest, a warrant is not needed in this situation.”). I would reach the same conclusion under article I, section 8 of the Iowa Constitution.
The Supreme Court has drawn a clear distinction between breath tests and coerced blood draws. See id. at -, 136 S.Ct. at 2165 (“The impact of breath tests on privacy is slight.... Blood tests, however, are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test.”); McNeely, 567 U.S. at -, 133 S.Ct. at 1568 (“[A] compelled physical intrusion beneath McNeely’s skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation ... implicate^] an individual’s ‘most personal and deep-rooted expectations of privacy.’” (quoting Winston v. Lee, 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985))). Petti-john was offered and consented to take the breath test—he simply had to exhale into a tube. Any infringement upon Pettijohn’s privacy was de minimis at best: “Humans have never been known to assert a posses-sory interest in or any emotional attachment to any of the air in their lungs.” Birchfield, 579 U.S. at -, 136 S.Ct. at 2177.
The majority misleadingly asserts that “a number of state courts concluded the mere existence of statutorily implied consent does not permit the administration of a warrantless test of an individual’s blood, breath, or urine consistent with the Fourth Amendment.” The majority supports that assertion by citing thirteen cases, without disclosing that twelve of the thirteen involved warrantless blood tests, not the breath test at issue here. See State v. Butler, 232 Ariz. 84, 302 P.3d 609, 613 (2013) (en banc); Harris, 184 Cal.Rptr.3d at 213; Williams v. State, 296 Ga. 817, 771 S.E.2d 373, 377 (2015); State v. Halseth, 157 Idaho 643, 339 P.3d 368, 371 (2014); State v. Declerck, 49 Kan.App.2d 908, 317 P.3d 794, 799 (2014); Brooks, 838 N.W.2d at 568; Modlin, 867 N.W.2d at 619; Byars v. State, 130 Nev. -, 336 P.3d 939, 945-46 (2014); State v. Fierro, 853 N.W.2d 235, 242-43 (S.D. 2014); State v. Wells, No. M2013-01145-CCA-R9CD, 2014 WL 4977356, at *13 (Tenn. Crim. App. 2014); Weems v. State, 434 S.W.3d 655, 665 (Tex. Ct. App. 2014); Padley, 849 N.W.2d at 887. Even worse, the majority fails to note that in three of its cited cases, the defendant withdrew his consent, and a warrantless forcible blood draw was administered over his objection. Halseth, 339 P.3d at 369; Fierro, 853 N.W.2d at 237; Weems, 434 S.W.3d at 658; see also Byars, 336 P.3d at *50 945-46 (“The State’s argument that consent is valid .,. is problematic because the statute makes the implied consent irrevocable.”).
The Iowa statute gives the driver a choice to consent or refuse the breath test. See Welch, 801 N.W.2d at 595 (“Thus, from a practical standpoint, and subject to certain exceptions, the driver must actually consent to the chemical testing,”[22] (Footnote omitted.)).-Pettijohn chose to take the breath test after being read the advisory that tracked the language of the statute. He, like any other Iowan, could have conferred with his own attorney for advice whether to consent to the test. Walker, 804 N.W.2d at 290 (citing Iowa Code § 804.20). We have never held the implied-consent advisory must inform the defendant of his constitutional right to refuse consent. See Knous, 313 N.W.2d at 511 (“Thus the right to refuse the test is a statutory right to withdraw consent which is deemed to exist by statutory implication.”); see also South Dakota v. Neville, 459 U.S. 553, 560 n.10, 103 S.Ct. 916, 921 n.10, 74 L.Ed.2d 748 (1983) (“[A] person suspected of drunk driving has no constitutional right to .refuse to take a blood-alcohol test.”).
The Supreme Court has also distinguished between implied-consent statutes that impose criminal sanctions and those that only impose civil penalties. In Birch-field, the Court held that a motorist could not be deemed to have consented to a blood draw when the implied-consent threatened a criminal penalty for refusal. 579 U.S. at-, 136 S.Ct. at 2185. However, the Court distinguished implied-consent statutes imposing civil penalties, noting,
Our prior opinions- have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and, nothing we say here should be read to cast doubt on them,.
Id. (emphasis added) (citations omitted). In State v. Yong Shik Won, cited by the majority, the Hawaii Supreme Court held its implied-consent statute unconstitutional when the defendant was informed that if he refused to submit to a test, he could be convicted of a crime for that test refusal and subject to thirty days’ imprisonment and a fine of $1000. 137 Hawai’i 330, 372 P,3d 1065, 1069, 1081 (2015). By contrast, Iowa’s implied-consent statutes impose no jail sentence or other criminal penalty for refusing a breath test. See Iowa Code § 462A.14B(2) (imposing civil monetary penalty and license revocation for one year). There is a stark difference between the thirty days in jail threatened in Yong Shik Won and the assessment of a monetary civil penalty. Cf. State v. Richardson, 890 N.W.2d 609, 622-23 (Iowa 2017) (“Thus, being incarcerated and owing 'a restitution-debt are simply not comparable. One is a matter of liberty, the other a financial obligation.”).
Not surprisingly, after Birchfield, state courts have continued to reject constitutional challenges to implied-consent laws imposing civil penalties for refusing breath tests. See Espinoza v. Shiomoto, 10 Cal.App.5th 85, 215 Cal.Rptr.3d 807, 831 (2017) (“[W]e conclude refusal to submit to a breath test incident to arrest may also be the basis of imposing civil penalties under *51 the implied consent law, including suspen-. sion or revocation of the motorist’s driver’s license.”); People v. Simpson, 392 P.3d 1207, 1213 (Colo. 2017) (“Colorado’s Expressed Consent Statute imposes only civil, and not criminal, penalties for refusal. Therefore, ... Birehfield sanctions rather than forbids justifying a warrantless blood draw on the basis of statutory consent,”); Lepre v. Commonwealth, 2017 WL 1337550, at *4 (Pa. Commw. Ct. Apr. 12, 2017) (upholding civil penalty of license revocation for refusal to submit to breath test); Wolfe v. Commonwealth, 67 Va.App. 97, 793 S.E.2d 811, 815 (2016) (“Significantly, appellant was not exposed to a criminal penalty if he refused the breath or blood test.”). Iowa’s civil penalty for a test refusal likewise is constitutional.
None of the cases cited by the majority have held that an implied-consent procedure offering defendant a choice is invalid as to warrantless breath tests. Our court is the first and only court to reach that conclusion. After Birehfield, courts have upheld implied consent under both the Federal and State Constitutions. See State v. Navarro, 241 Ariz. 19, 382 P.3d 1234, 1236 (App. 2016) (holding under art. II, § 8 of Arizona Constitution “rion-invasive breath tests for DUI arrestees” were a “slight inconvenience” and did not require a warrant (quoting State v. Berg, 76 Ariz. 96, 259 P.2d 261, 266 (1953), overruled on other grounds by State v. Pina, 94 Ariz. 243, 383 P.2d 167, 168 (1963))); Williams v. State, 210 So.3d 774, 776 (Fla. Dist. Ct. App. 2017) (“[W]e adopt the holding in Birehfield that breath-alcohol tests are permissible.... ”); State v. Cornwell, 294 Neb. 799, 884 N.W.2d 722, 726-27 (2016) (“[P]ost-Birehfield, a warrantless breath test is reasonable and does not run afoul of the Fourth Amendment. Nor do we find that it runs counter to Neb. Const, art. I, § 7....”); Commonwealth v. Boone, No. 3492 EDA 2015, 2017 WL 781664, at *2 n.4 (Pa. Super. Ct. Feb. 28, 2017) (noting that even if issue of warrantless breath test had been preserved, “it would not warrant relief’); State v. Baird, 187 Wash.2d 210, 386 P.3d 239, 245, 247 (2016) (en banc), (concluding, there was “no constitutional right to refuse the breath test” although implied-consent statute granted right to refuse as aspect of “legislative grace”); State v. Lemberger, 374 Wis.2d 617, 893, N.W.2d 232, 242 n.13 (2017) (“[Sjuffice it to say that Lemberger does not adequately establish that Article I, section 11 possesses a different meaning than the Fourth Amendment to the United States Constitution in this context.”). I would follow the legion of cases that uphold implied-consent statutes for breath tests.
The Birehfield Court held “the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving.” 579 U.S. at-, 136 S.Ct. at 2184.1 reach- the same conclusion under our state constitution for boaters and motorists alike and would affirm the district court.
Y. Given the Predictable Legislative Response, the Court’s Decision Will Lead Us Away from Individualized Justice and Toward Assembly-Line Justice.
Finally, I predict that this decision will actually disserve the very people it is intended to benefit—suspected intoxicated boaters. Iowa does not stand still for our court. In all likelihood, there will be a legislative response. This session the legislature authorized electronic warrants for the first time. S.F. 358, 87th G.A., 1st Sess. § 4 (Iowa 2017). Among other steps the general assembly may consider are. (1) making preliminary breath test results admissible, and (2) narrowing Iowa Code section 804.20 to exclude those detained for suspicion of drunken boating. Let us review them.
*52 A. Preliminary Breath Test Results Admissible. Typically, a preliminary breath test (PBT) is administered at the scene of the stop when the officer has reasonable grounds to believe the boat operator is intoxicated. Under existing law, the results are not admissible, but a refusal to take the test is. Iowa Code § 321J.5(2). Yet as testing technology has advanced and these tests have become more reliable, why not just legislate that the PBT results are admissible?
B. Revision of Iowa Code Section 804.20.Additionally, once the implied-consent process is eliminated for boaters, it becomes more difficult to see the underlying purpose served by Iowa Code section 804.20. This statute allows someone who has been arrested to promptly call, consult with, and see an attorney or family member. Although it applies in other contexts, the statute has traditionally been tied to the implied-consent process. See Walker, 804 N.W.2d at 290 (“Most of our cases, however, have involved the statutory right to place a telephone call to an attorney or family member when pulled over for drunk driving.”); State v. Tubbs, 690 N.W.2d 911, 914 (Iowa 2005) (“One purpose of section 804.20, of course, is to allow an arrestee to call an attorney before deciding whether to submit to a chemical test.”). Under Iowa Code section 804.20, the person arrested for drunken boating is given an opportunity to consult with an attorney before deciding whether to take the chemical test.
But if law enforcement is going to have to get a warrant anyway so the attorney consultation fills no immediate need, why bother? Time is passing while the parties wait for the attorney to answer the phone or come to the station house. It would not surprise me to see the legislature amend section 804.20 to exclude boaters.
C.Electronic Warrants. We can also expect to see electronic warrants pursuant to the new legislation. That is, law enforcement will submit a sworn warrant application via the court’s electronic data management system (EDMS) to a judicial officer with a note to call “if there are questions,” the magistrate will call and recite the oath, and the approved warrant will then be transmitted electronically back to law enforcement. If our court upholds this procedure under article I, section 8—and we would be hard-pressed to disapprove it since the majority mentions EDMS warrants as one justification for its current ruling—we will then have assembly-line warrants for breath testing.
So this is our future: in-the-field PBTs may be admissible, no call or consultation with an attorney will be allowed before chemical breath tests take place at the station, and warrants will be routinely sought and issued based on electronic applications without face-to-face contact between the judicial officer and law enforcement. Taking things further, a rotation could be devised in which one judicial officer per judicial district would be assigned one “night shift” per month. That officer would sit at her or his computer through the night and handle all of that district’s electronic warrant requests. This would meet the legal requirements of today’s decision, but it would not advance our criminal justice system.
For these reasons, I respectfully dissent.
Mansfield and Zager, JJ., join this dissent.

. We held over this appeal from last term for supplemental briefing and a second argument last September in light of Birchfield. Why did we delay our decision by over a year for Birchfield only to decline to follow its resolution of the constitutionality of warrantless breath tests?

. The majority notes telephone warrants are permitted under limited circumstances set forth in Iowa Code section 321J.10(3), In State v. Johnson, we noted the time-consuming complexities involved in that telephonic warrant procedure:
Obtaining a warrant by telephone is fairly complicated; an officer cannot simply call up a magistrate and make a general request for a warrant. The officer must prepare a "duplicate” warrant and read the duplicate warrant, verbatim, to the magistrate. The magistrate then must enter, verbatim, what has been read to him on a form to be considered as the original. warrant. Iowa Code § 321 J. 10(3)(&). The oral application must set forth facts and information tending to establish the grounds for the issuance of the warrant and describe with reasonable specificity the person or persons whose 'driving has been involved and from whom the specimen is to be withdrawn. Id, § 321 J. 10(3)(c). Gathering of this information, of course, requires considerable time. If a voice recording device is available to the magistrate, the magistrate may record the call, but otherwise "shall cause a stenographic or longhand memorandum to be made of the oral testimony of the person applying for the warrant.” Id. § 321J.10(3)(d). If the magistrate is satisfied that the grounds for the issuance of the warrant have been established, the magistrate shall order the issuance of the warrant by directing the officer applying for it to sign the magistrate’s name to the "duplicate” warrant. Id. § 321J.ld(3)(e).
744 N.W.2d 340, 345 (Iowa 2008).

. The majority relies on a special concurrence in State v. Gaskins, which states officers have "the capability to access the court system from the computer in a police vehicle to request a search warrant based on probable cause at all times of the day and night.” 866 N.W.2d 1, 17 (Iowa 2015) (Cady, CJ., concurring specially). There was no factual support for that assertion in Gaskins.

. “In 1986, the' implied-c'onsent statutes from chapter 32IB were combined with the criminal OWI laws.” State v. Fischer, 785 N.W.2d 697, 700 (Iowa 2010) (citing 1986 Iowa Acts ch. 1220 (codified at Iowa Code ch. 3211(1987))).

. "Iowa Code section 321J.7 provides that '[a] person who is dead, unconscious, or otherwise in a condition rendering the person incapable of consent or refusal is deemed not to have withdrawn the consent provided by section 321J.6,’ ” See also Welch, 801 N.W.2d at 595 n.4 (quoting Iowa Code § 321J.7). Pet-tijohn was not in such a condition and freely consented to the breath test.