NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1279                                        Appeals Court

COMMONWEALTH vs. BRIAN G. DENNIS.

No. 17-P-1279.

Hampden.      April 2, 2019. - November 19, 2019.

Present: Rubin, Henry, & Wendlandt, JJ.

Motor Vehicle, Operating under the influence. Evidence, Blood
      alcohol test. Constitutional Law, Search and seizure,
      Blood test. Search and Seizure, Blood sample, Consent,
      Exigent circumstances. Consent. Practice, Criminal,
      Motion to suppress.

Complaint received and sworn to in the Palmer Division of
the District Court Department on November 14, 2016.

A pretrial motion to suppress evidence was heard by Matthew
J. Shea, J., and a motion for reconsideration was heard by him.

Erica M. Bruno for the defendant.
Benjamin Shorey, Assistant District Attorney, for the
Commonwealth.

RUBIN, J. In this case, we are required to examine the

consequences with respect to police practices in the

Commonwealth of three relatively recent United States Supreme

Court decisions relating to the scope of governmental authority

to draw and test the blood of an individual arrested for operating while under the influence of intoxicating liquor. The defendant argues that, because of these decisions, the motion judge erred in denying his motion to suppress. We agree and therefore reverse.

Background. In reviewing the denial of a motion to suppress, we "accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). In his decision on the motion to suppress, the judge credited the testimony of Officer Melissa Dion of the Ludlow Police Department, who testified at the motion to suppress hearing. The judge made findings of fact and adopted Officer Dion's version of events as true. His findings, supplemented by the testimony that he credited, Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008), include the following:

At approximately 12:11 A.M. Officer Dion and another officer, Andrew Roxo, responded to a report of a car crash, and found the defendant unconscious in his vehicle, which had apparently crashed into a utility pole. Witnesses from the sheriff's department were present, and they extracted the defendant from his car. The defendant regained limited ability to respond to questions in a yes/no fashion and admitted that he

had had something to drink.  Officer Dion observed a number of empty alcohol containers in the defendant's car and the odor of alcohol on the defendant.  When asked, the defendant responded that he did not have any preexisting medical conditions.

Officers Dion and Roxo called for an ambulance, which arrived and took the defendant to Baystate Medical Center in Springfield, where it arrived at approximately 1:00 A.M. Officer Dion went with the defendant in the ambulance and stayed with him at the hospital.  The defendant was placed under arrest for operating while under the influence of alcohol, and Miranda warnings were administered to him by Officer Dion in the ambulance.  In the emergency room, Miranda warnings were readministered by Officer Dion and the defendant said that he had been drinking and was guilty.

Officer Dion's initial attempt to obtain the defendant's consent to a blood draw was delayed when a nurse indicated that the defendant was not medically cleared to consent.  At approximately 3:30 A.M., when the defendant apparently had been medically cleared for a conversation about obtaining a blood draw, and his demeanor had materially changed from his initial one-word answers, Officer Dion read to the defendant at the hospital a "statutory rights and consent form."  That form states, as relevant here:

"I am requesting that you submit to a chemical test to determine your blood alcohol concentration. . . . If you refuse this test, your license or right to operate in Massachusetts shall be suspended for at least a period of up to 180 days or up to life for such refusal. The suspension if you take the test and fail it is 30 days. . . . If you decide to take the test and complete it, you will have the right to a comparison blood test within a reasonable period of time at your own expense. The results of this comparison test can be used to restore your license or right to operate at a court hearing within 10 days. . . . It is not your option which type of chemical test to take. Refusal or failure to consent to take the test that I am requesting is a violation of the Implied Consent Law, and will result in your right to operate a motor vehicle being suspended as I have stated to you."

The form contains an additional "notice to persons holding a commercial driver's license" that referred to a "required test of blood, breath, or urine," but there is no evidence that this notice was applicable to the defendant. The part of the form that was applicable to the defendant does not specify that the "chemical test" will be on blood, as opposed to breath, urine, or anything else, nor does it state that blood will be drawn. The judge found that the defendant stated that he understood the form, that he signed the form, and that "[b]lood was taken from the defendant after the form was signed." In denying the motion to suppress, the judge concluded that "[a]t no time did the defendant object to the drawing of blood or otherwise attempt to frustrate the procedure."

The defendant filed a motion for reconsideration, which was denied, and from which he also appeals. He subsequently entered

a conditional plea, admitting to facts sufficient for a finding of guilty to operating while under the influence of alcohol, G. L. c. 90, § 24 (1) (a) (1), but the parties and the motion judge agreed that the defendant's right to appeal from the denial of his motion to suppress and his motion for reconsideration would be preserved.  In Commonwealth v. Gomez, 480 Mass. 240, 252 (2018), the Supreme Judicial Court approved this procedure, and consequently we turn to the merits of the appeal.[1]

Discussion.  The defendant argues that he did not consent to the blood draw.  The Commonwealth argues that he did.  They disagree about the standard that we should use to evaluate the question.  Some background about the law is in order.

A.  Blood draws and consent.  It is well settled that one has a reasonable expectation of privacy in one's blood such that the piercing of one's skin with a needle to draw blood, and the testing of that blood, constitute a full-blown seizure and search for purposes of the Fourth Amendment to the United States Constitution.  Commonwealth v. Angivoni, 383 Mass. 30, 32

---

[1] Although it "does not object to the appeal on these grounds," the Commonwealth argues that the procedures set out in Gomez were not followed because the motion to suppress was not a "dispositive motion."  Gomez, however, grants the plea judge discretion to allow a guilty plea conditioned on the ability to appeal from the denial of a nondispositive motion, and provides that we may hear the ensuing appeal with respect to that denial. Gomez, 480 Mass. at 252.

(1981).  As a matter of constitutional law, neither can be undertaken by government officials without probable cause and a warrant, absent some exception to the warrant requirement.  See Missouri v. McNeely, 569 U.S. 141, 148 (2013), quoting Winston v. Lee, 470 U.S. 753, 760 (1985) ("Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy'").  In the absence of probable cause and a warrant (or exigent circumstances excusing the failure to obtain that warrant), police thus may not draw blood without consent.[2]  An agreement to have one's blood drawn and tested amounts to a waiver of one's constitutional right.  Consequently, the constitutional standard for consent applies.  Such consent must be "voluntary" under the Federal Fourth Amendment standard.  This is not the "intentional relinquishment of a 'known' right" standard.  See Schneckloth v. Bustamonte, 412 U.S. 218, 238 (1973).  Rather "[t]he Commonwealth must show consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority" (quotations and citation omitted).  Commonwealth v. Ortiz, 478 Mass. 820, 823 (2018).

---

[2] The search incident to an arrest exception cannot justify a warrantless blood draw.  See Birchfield v. North Dakota, 136 S. Ct. 2160, 2185 (2016).

By contrast, where there is an exigency, the drawing and testing of blood requires probable cause, but the requirement of a warrant is excused.  If there is probable cause to believe an individual has been driving while under the influence of intoxicating liquor, and there are exigent circumstances excusing the warrant requirement, the Federal Constitution imposes no requirement of consent before blood may be drawn from an individual, even if the police have no warrant.

Nonetheless, we have held that, in this Commonwealth, a requirement of consent is imposed by statute even when, because there is probable cause and exigent circumstances, one is not imposed by the Federal Constitution.  As we held in Commonwealth v. Davidson, 27 Mass. App. Ct. 846, 848-849 (1989), where a blood draw by police is for these reasons permitted under the Fourth Amendment, "[t]he right of refusal [a defendant] does have stems from the statute, which requires that a test not be conducted without his consent."  In this regard, and perhaps surprisingly, as we described in Davidson, a State law right to refuse is provided by what is colloquially called our "implied consent" law.  Like other States, the Commonwealth has such a law, and its text states:

> "Whoever operates a motor vehicle upon any way or in any place to which the public has right to access, or upon any way or in any place to which the public has access as invitees or licensees, shall be deemed to have consented to submit to a chemical test or analysis of his breath or

blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor; provided, however, that no such person shall be deemed to have consented to a blood test unless such person has been brought for treatment to a medical facility licensed under the provisions of [G. L. c. 111, § 51] . . . ."

G. L. c. 90, § 24 (1) (f) (1).

But, despite purporting to state in the quoted passage that one is "deemed to have consented" simply by operating a motor vehicle in the manner described, it is clear that the statute in fact requires actual consent before the police may undertake a blood (or breath) test.  That is because it goes on to say,

"If the person arrested refuses to submit to such test or analysis, after having been informed that his license or permit to operate motor vehicles or right to operate motor vehicles in the commonwealth shall be suspended for a period of at least 180 days and up to a lifetime loss, for such refusal, no such test or analysis shall be made and he shall have his license or right to operate suspended in accordance with this paragraph for a period of 180 days . . . ."

(Longer periods of revocation are provided for those who have certain previous convictions.)  In Davidson, however, we held that the test for consent under the statute is easier to meet than the test for consent under the Federal Constitution.  We said, "Typically, where a right is conferred by statute and is not a fundamental constitutional right, we apply traditional indicia of waiver of rights. . . .  Traditional indicia include waiver by inaction, by express agreement, by untimely motion, and by failure to object. . . .  It is

apparent from context that G. L. c. 90, § 24(1)(e) and (f), do not contemplate voluntary consent in the constitutional sense" (quotation and citations omitted).  Davidson, 27 Mass. App. Ct. at 848-849.

B.  When are there exigent circumstances?  Where, as in this case, there is probable cause to believe an individual has been operating while under the influence of intoxicating liquor but there is no warrant authorizing a blood draw, which test for consent applies thus depends upon whether there are exigent circumstances excusing the need for a warrant.  In Schmerber v. California, 384 U.S. 757 (1966), a case in which there was probable cause to believe that an individual involved in a one-car accident had been operating the vehicle while under the influence of intoxicating liquor, the United States Supreme Court held that no warrant was necessary because of exigent circumstances.  See id. at 770 ("Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned").  The Supreme Court concluded that the police officer in that case "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' Preston v. United

States, [376 U.S. 364, 367 (1964)]. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." Id. at 770-771.

Although Schmerber involved an accident and the need to investigate, in 1989 in Davidson we construed Schmerber broadly, holding that "[w]here there is probable cause to believe that a defendant has been operating a vehicle while under the influence of intoxicating liquor, the defendant has no constitutional right to refuse a blood test or a breathalyzer test" (emphasis added). Davidson, 27 Mass. App. Ct. at 848. Although not stated explicitly, this holding necessarily reflects our conclusion that Schmerber stands for the proposition that there is always exigency when there is probable cause to believe an individual has been operating while under the influence of intoxicating liquor, presumably because of the predictable dissipation of blood alcohol.

Under Davidson, then, whenever there was probable cause to arrest a driver for operating while under the influence of intoxicating liquor, because there was always an exigent

circumstance, even in the absence of a warrant, the Federal Constitution was held to play no role in preventing even a compelled blood draw.  Rather, since Davidson was decided, whenever there has been probable cause to believe an individual was operating while under the influence of intoxicating liquor, we have, employing only the restrictions imposed by our implied consent law, applied the "traditional indicia" standard to determine the validity of consent to a blood test.  Utilizing that standard, we have held that "valid consent only requires 'verbal agreement to undergo, lack of objection to, or cooperation in the performance of, the blood testing.'" Commonwealth v. Thompson, 87 Mass. App. Ct. 572, 575 (2015), quoting Commonwealth v. Carson, 72 Mass. App. Ct. 368, 370 (2008).

Recent United States Supreme Court decisions, however, make clear that the holding in Davidson on the scope of the exigent circumstances exception is no longer good law.  Six years ago, in Missouri v. McNeely, 569 U.S. 141 (2013), the Supreme Court clarified that the scope of the exigent circumstances exception to the warrant requirement articulated in Schmerber is not as broad as we concluded it was in Davidson.  Specifically, in McNeely, the Court held that the exigent circumstances that justify dispensing with a warrant are not invariably present when there is probable cause in drunk driving cases, even though

blood alcohol will predictably dissipate. In McNeely, the Court held that unless, upon an examination of the "totality of the circumstances," the government has demonstrated that "the officer might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence" a warrant is required before blood may be drawn from an individual with respect to whom there is probable cause to believe he or she has been operating while under the influence of intoxicating liquor (quotation and citation omitted). McNeely, supra at 150. The Court reaffirmed Schmerber, in which a defendant had been driving a car that had collided with a tree. See Schmerber, 384 U.S. at 758 n.2. The Court, however, rejected the contention that "whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because [blood alcohol content] evidence is inherently evanescent." McNeely, supra at 151. The Court held that, "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." Id. at 152. The Court held that this was so notwithstanding the fact that a police officer must typically transport a drunk-driving suspect

to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test, see Schmerber, supra at 771-772, such that "some delay between the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant." McNeely, supra at 153. The Court specifically stated, "Consider, for example, a situation in which the warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer. In such a circumstance, there would be no plausible justification for an exception to the warrant requirement." Id. at 153-154. The Court also noted that many jurisdictions now permit police officers to obtain warrants telephonically, or electronically, reducing the amount of time necessary to obtain a warrant. See id. at 154-155.

To be sure, after McNeely was decided, in 2015 we handed down Thompson, 87 Mass. App. Ct. 572, in which, in reliance on Davidson, we applied the statutory traditional-indicia test for consent to a blood draw by someone with respect to whom there was probable cause without discussing the presence or absence or exigent circumstances. But this court in Thompson did not cite McNeely; nor was it cited in the parties' briefs, which did not

indicate that there had been any change in the law since Davidson. In any event, if there was any question after McNeely whether, in the absence of exigent circumstances, we could still apply only the weaker traditional-indicia test for consent in cases in which there was probable cause that the individual had been driving drunk, it was resolved by the Supreme Court's post-Thompson decision in Birchfield v. North Dakota, 136 S. Ct. 2160, 2186 (2016), in which the Court stated that, in such cases, in the absence of a warrant or exigent circumstances, the defendant's actual consent to a blood test must be "voluntary" under the Federal Fourth Amendment standard. The Court remanded for determination whether the consent given to the blood tests was "voluntary" under the constitutional standard. Id. See Commonwealth v. Myers, 640 Pa. 653, 681 (2017) ("The Birchfield Court's application of its holding further supports the conclusion that, despite the existence of an implied consent provision, an individual must give actual, voluntary consent at the time that testing is requested"). See also State v. Vargas, 2017-NMSC-029, ¶ 22, 404 P.3d 416, 422 (holding that, after Birchfield, "[i]mplied consent laws can no longer provide that a driver impliedly consents to a blood draw"); State v. Romano, 369 N.C. 678, 691 (2017) (interpreting Birchfield, and holding that "[t]reating [a statute according to which unconscious drivers are deemed to have consented to a blood draw] as an

irrevocable rule of implied consent does not comport with the consent exception to the warrant requirement because such treatment does not require an analysis of the voluntariness of consent based on the totality of the circumstances").

Finally, the Commonwealth argues that, even if the constitutional standard applies, it is satisfied by the "implied consent" described in the implied consent statute, such that even in the absence of a warrant or exigent circumstances, only the statutory requirement of consent measured by "traditional indicia" stands in the way of a compelled blood test of any person driving on any of the roadways defined in the statute. This bold argument, however, founders on an even more recent Supreme Court decision, Mitchell v. Wisconsin, 139 S. Ct. 2525 (2019), in which a majority of the Supreme Court made clear that implied consent statutes, despite their monicker, have never been held to give constitutionally adequate consent to a search. See id. at 2533 (plurality opinion of Alito, J., joined by Roberts, C.J., and Breyer and Kavanaugh, JJ.) ("[O]ur decisions have not rested on the idea that these laws do what their popular name might seem to suggest -- that is, create actual consent to all the searches they authorize"); id. at 2545 (Sotomayor, J., joined by Ginsburg and Kagan, JJ., dissenting) ("The plurality does not rely on the consent exception here.

See [id.] at 2532.  With that sliver of the plurality's reasoning I agree").

To summarize, the consequences of McNeely, Birchfield, and Mitchell for our assessment of the standards for evaluating consent to a blood draw by a defendant with respect to whom there is probable cause to believe he or she was operating a motor vehicle while under the influence of intoxicating liquor are as follows:

1.  A blood draw requires a warrant or exigent circumstances excusing the failure to obtain a warrant.  There are not necessarily exigent circumstances when there is probable cause to believe someone has been operating while under the influence, despite the predictable dissipation of blood alcohol.  When there is neither a warrant nor exigent circumstances, blood may be drawn only with consent that meets the Federal constitutional standard of actual, voluntary consent under the Fourth Amendment, not the lower standard of consent required under our statute.

2.  When there are exigent circumstances so that the Fourth Amendment poses no bar to a compelled blood test, a right to refuse is provided by statute, and blood may be drawn only with the individual's consent as measured under the "traditional indicia" articulated in Davidson.

C.  Application of the law to the facts.  In this case, the
Commonwealth had probable cause to believe the defendant was
operating while under the influence of intoxicating liquor, but
lacked a warrant.  The Commonwealth has not argued that there
were exigent circumstances, and at oral argument it explicitly
disclaimed any reliance on the exigent circumstances exception.
It has therefore waived any such claim, and we will proceed on
the basis that there were no exigent circumstances.
Commonwealth v. Louraine, 390 Mass. 28, 38 n.13 (1983).[3]  Under
the Federal Constitution, then, the defendant's blood could be
drawn only with his consent, and the question before us is
whether the Commonwealth has met its burden of demonstrating
that the defendant gave actual, voluntary consent under the
Federal constitutional standard.  See Birchfield, 136 S. Ct. at
2186.  The defendant argues that because the statutory rights
and consent form language about a "chemical test" is ambiguous,
his agreement to what was requested by the form is insufficient
to meet the Commonwealth's burden of proving voluntary consent
under this standard.

The motion judge did not analyze the case in this way
because he concluded, incorrectly, that the defendant had no

---

[3] Consequently we need not and do not reach the question
whether the Commonwealth could have established an exigency on
the facts of this case.

constitutional right to refuse a blood test, and therefore examined only the less stringent "traditional indicia" of consent set forth in Davidson, under which the defendant's failure to object has greater significance than it does under the constitutional test.  The judge did not address the defendant's argument that the statutory consent form was too ambiguous for his signature to manifest consent.  Instead, the judge found and emphasized the fact that "[a]t no time did the defendant object to the drawing of his blood, exhibit any reluctance to submit to the draw, or otherwise indicate his lack of consent."

However, under the constitutional test, "[t]he isolated fact that a person does not object to an entry does not establish consent."  Commonwealth v. Brown, 32 Mass. App. Ct. 649, 652 (1992).  Contrast Thompson, 87 Mass. App. Ct. at 574 (reversing the allowance of a motion to suppress because the judge incorrectly applied the constitutional standard instead of the "traditional indicia" standard).

The consent form did not specify that the defendant was consenting to a blood test.  It stated a "chemical test."  The closest it came was stating, "It is not your option which type of chemical test to take."  But without some enumeration of the types that may be given, that is inadequate to inform the defendant that he is being asked to allow a blood test, a

"physical intrusion beneath [his] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation.  Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'"  McNeely, 569 U.S. at 148, quoting Winston, 470 U.S. at 760.  Indeed, at one point the form provides, "If you decide to take the test and complete it, you will have a comparison blood test within a reasonable period of time at your own expense," which might be understood to be contrasting a "blood test" with the kind of "chemical test" for which the form was seeking consent.

Because it is ambiguous what the defendant was agreeing to by signing the form, the evidence cannot suffice to sustain the Commonwealth's burden of demonstrating actual consent to a blood test.  Cf. Commonwealth v. Rogers, 444 Mass. 234, 239 (2005) ("[T]he ambiguity of both the officers' and [the occupant's] words and actions makes it difficult to discern whether there was actual consent in this case").  To the extent the defendant's conduct in not objecting at the time of the blood draw is relevant, the temporal proximity between the signature and the blood draw is not clear from the evidence, nor is there any evidence the nurse who took the blood indicated in any way that it was for the police, rather than for medical purposes.

On this record, it cannot make up for the weakness in the Commonwealth's evidence of consent to the blood test.

The order denying the motion to suppress is reversed.

<u>So ordered</u>.